O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VICTORIA URENIA, an individual; SOLEDAD CORONA, an individual, | ) ) ) | Case No. CV 13-01934 DDP (AJWx) |
| | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANTS BANK |
| Plaintiffs, | ) ) | OF AMERICA, N.A., PUBLIC STORAGE, AND MICHAEL ANZ'S MOTION TO |
| | ) | DISMISS PLAINTIFFS' COMPLAINT |
| v. | ) ) | |
| PUBLIC STORAGE, a real estate investment trust; | ) ) | [DKT. NO. 25] |
| CITY OF LOS ANGELES, a governmental entity; BANK OF AMERICA, N.A.; MICHAEL ANZ, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Presently before the Court is Defendants Bank of America, N.A., Public Storage, and Michael Anz's motion to dismiss Plaintiffs' complaint (the "Motion"). (Docket No. 25.) For the reasons stated in this Order, the Motion is GRANTED IN PART and DENIED IN PART.

///

///

///

///

**I. Background**[1]

Plaintiffs Victoria Urenia and Soledad Corona ("Plaintiffs") bring this class action complaint against Bank of America, N.A., Public Storage, Michael Anz, and the City of Los Angeles (collectively, "Defendants"). Bank of America, Public Storage, and Anz (collectively, "Private Defendants") have filed this Motion, while City of Los Angeles has filed an answer and has not sought dismissal of this action. (Docket No. 28.) Plaintiffs failed to timely file an opposition to the Motion, but later filed an *ex parte* application to allow them to file a late opposition. (Docket No. 41.) The Court granted the *ex parte* application (Docket No. 45), and now the Motion has been fully briefed by the parties.

Plaintiff Corona was the owner of the real property located at 2200 Daly Street, Los Angeles, California 90031 (the "Property"). (Complaint, Docket No. 1, ¶ 3.) Plaintiff Urenia is the daughter of Ms. Corona. (Id. ¶ 2.) In 2009, Plaintiffs allege that Bank of America foreclosed on the Property while Ms. Corona was in the middle of a loan modification, in violation of HUD regulations. (Id. ¶¶ 24-25, 27.) A Notice of Trustee's Sale was recorded on October 29, 2009, and Bank of America obtained title to the Property on December 14, 2009. (Id. ¶¶ 26, 28.) Bank of America obtained a judgment for possession through an unlawful detainer action against Ms. Corona in 2010. (Id. ¶ 30.) However, Plaintiffs

---

[1]Defendants include a variety of factual statements in their Motion. To the extent that those facts are supported by judicially noticeable documents, the Court shall take those facts into account in ruling on the Motion. Otherwise, such facts shall not be considered in determining the sufficiency of Plaintiffs' pleadings. Plaintiffs also include alleged facts in their opposition to the Motion that were not included in the Complaint. Such facts shall not be considered in ruling on the Motion.

allege that Bank of America did not obtain actual possession of the Property at that time. (Id. ¶ 31.)[2]

In April 2012, Ms. Corona joined Occupy Fights Foreclosures ("OFF"), an offshoot of the larger Occupy movement. (Id. ¶ 32.) On December 6, 2012, Plaintiffs received a Notice to Vacate, which required them to vacate the Property no later than December 11, 2012. (Id. ¶ 35.) On December 13, 2012, the Los Angeles County Sheriffs locked Plaintiffs out of the Property. (Id. ¶ 37.) Plaintiffs allege that the Sheriffs Department allowed them to return to the Property on December 23, 2012. (Id. ¶ 38.) During the time period when Plaintiffs were locked out of the Property, OFF members had set up tents in the front yard in protest. (Id. ¶ 39.)

Bank of America called the Los Angeles Police Department ("LAPD") on January 18, 2013 and demanded that the locks be changed and all persons evicted from the Property. (Id. ¶ 41.) LAPD allegedly went to the Property, forced Ms. Urenia out of the Property, changed the locks, and erected a chicken-wire fence around the Property. (Id. ¶¶ 94-95.) LAPD allegedly refused to allow Plaintiffs to obtain their personal belongings from the Property and threatened arrest if Plaintiffs returned. (Id. ¶¶ 42, 97.) Plaintiffs allege that on January 22, 2013, they returned to the Property to find Michael Anz, a Bank of America representative, loading their personal property onto a moving truck.[3] (Id. ¶¶ 100-

---

[2]Though Plaintiffs do not allege facts indicating as much, it appears that Plaintiffs filed an action in state court for breach of contract relating to alleged failures to properly conduct the loan modification process. That action was dismissed for failure to state a claim, and the dismissal was affirmed on appeal.

[3]The alleged timeline of the events following LAPD locking
(continued...)

1   02.) Plaintiffs allege that they were allowed only one hour to pack

2   as many of their belongings as they could because OFF was holding a

3   candlelight vigil at the Property that evening. (Id. ¶¶ 103-04.)

4       On February 28, 2013, Michael Anz allegedly took Plaintiffs'

5   personal belongings from the Property. (Id. ¶ 43.) Ms. Corona asked

6   whether she could have her personal belongings, but various

7   Defendants refused. (Id. ¶¶ 44-46.) Plaintiffs later learned that

8   their belongings had been taken to a Public Storage facility

9   located at 4009 Mission Road, Los Angeles, California. (Id. ¶ 47.)

10  Public Storage allegedly refused to turn over their belongings,

11  saying that they belonged to Michael Anz. (Id. ¶¶ 48-49.)

12  Plaintiffs allege that Public Storage insisted that Ms. Corona sign

13  a release and rental lease agreement before they could return her

14  belongings. (Id. ¶ 54.) Ms. Corona refused to sign the document

15  because it contained untrue statements, including a statement that

16  none of the stored property contained important documents, personal

17  identification, perishables, or sentimental items. (Id. ¶¶ 55-56.)

18      Plaintiffs allege that Michael Anz contacted Plaintiffs'

19  attorney and said that Plaintiffs could obtain their belongings

20  from him. (Id. ¶ 61.) As a result, Ms. Corona returned to Public

21  Storage on March 16, 2013 along with seven people to help her move

22  her belongings. (Id. ¶ 62.) However, Plaintiffs' attorney was

23  allegedly presented with the same lease agreement document

24  containing untrue statements. (Id. ¶ 63.) Plaintiffs' attorney

25  _____

26      [3](...continued)
    Plaintiffs out of the Property is not entirely clear, especially

27  with regard to how many times and on what dates Ms. Corona alleges
    that she spoke with Michael Anz and/or Public Storage to attempt to

28  get her belongings returned to her. The exact dates on which these
    events happened do not appear to be significant.

1  wrote disclaimers on the document. (Id. ¶ 64.) As a result, Public

2  Storage refused to return Plaintiffs' belongings, stating that it

3  was Public Storage policy not to release belongings from foreclosed

4  homes unless the lease agreement document was signed in unaltered

5  form. (Id. ¶ 65.)

6      Plaintiffs bring a variety of claims arising out of these

7  events. Plaintiffs allege violations of the First Amendment, Fourth

8  Amendment, RICO, the Sherman Act, and Cal. Bus. & Prof. Code §

9  17200. Further, Plaintiffs seek to set aside the foreclosure sale.

10  Plaintiffs purportedly bring all of their claims on behalf of a

11  class of similarly situated individuals who have been subjected to

12  the same alleged acts that Plaintiffs experienced.[4]

13  **II. Legal Standard**

14      A complaint will survive a motion to dismiss when it contains

15  "sufficient factual matter, accepted as true, to state a claim to

16  relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.

17  662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

18  570 (2007)). When considering a Rule 12(b)(6) motion, a court must

19  "accept as true all allegations of material fact and must construe

20  those facts in the light most favorable to the plaintiff." Resnick

21  v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint

22  need not include "detailed factual allegations," it must offer

23  "more than an unadorned, the-defendant-unlawfully-harmed-me

24  accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or

25  allegations that are no more than a statement of a legal conclusion

26  _____

27      [4]Though the issue is not before the Court at this time, the
    Court expresses skepticism as to whether the causes of action and
28  facts asserted by Plaintiffs may properly be adjudicated as a class
    action.

1  "are not entitled to the assumption of truth." Id. at 679. In other

2  words, a pleading that merely offers "labels and conclusions," a

3  "formulaic recitation of the elements," or "naked assertions" will

4  not be sufficient to state a claim upon which relief can be

5  granted. Id. at 678 (citations and internal quotation marks

6  omitted).

7      "When there are well-pleaded factual allegations, a court

8  should assume their veracity and then determine whether they

9  plausibly give rise to an entitlement of relief." Id. at 679.

10  Plaintiffs must allege "plausible grounds to infer" that their

11  claims rise "above the speculative level." Twombly, 550 U.S. at

12  555. "Determining whether a complaint states a plausible claim for

13  relief" is a "context-specific task that requires the reviewing

14  court to draw on its judicial experience and common sense." Iqbal,

15  556 U.S. at 679.

16  **III. Discussion**

17      A. Section 1983 Claims[5]

18      Plaintiffs' § 1983 claims appear to be based on purported

19  violations of Plaintiffs' First Amendment and Fourth Amendment

20  rights. (Complaint ¶¶ 88-142.) Private Defendants argue that

21  Plaintiffs' Section 1983 claims should be dismissed as to them

22  because they are not state actors and did not act under color of

23  law. "To state a claim under § 1983, a plaintiff must allege two

24  essential elements: (1) that a right secured by the Constitution or

25

26      [5]The existence of underlying constitutional violations by LAPD
27  officers was not challenged in the Motion, although Private
    Defendants dispute that there were any such violations in their
28  Reply. The Court does not decide here whether or not any viable §
    1983 claims exist against the City of Los Angeles.

laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Generally, private actors do not act under color of state law. Price v. State of Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991). Further, "it is generally not a constitutional violation for a police officer to enforce a private entity's rights." Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008). Nor does a private party's invocation of remedies provided by state law constitute state action. See Harper v. Federal Land Bank of Spokane, 878 F.2d 1172, 1178 (9th Cir. 1989) ("[T]he fact that a state permits the use of foreclosure procedures and subsequent sheriff sales as the execution of a judgment is not sufficient to constitute state action.").

However, there are situations where a private individual or entity can be held liable under § 1983. Plaintiffs contend in their opposition to the Motion that the Private Defendants acted in concert with the LAPD such that the Private Defendants can be deemed to have acted under color of state law. See Kirtley v. Rainey, 326 F.3d 1088, 1093-95 (9th Cir. 2003); Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1140 (9th Cir. 2012). Joint action exists where the state has "so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity." Gorenc v. Salt River Project Agric. Improvement & Power Dist., 869 F.2d 503, 507 (9th Cir. 1989) (quoting Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961)).

1    As to Plaintiffs' First Amendment claim, the Court finds that

2  Plaintiffs have not pled sufficient facts to support a claim that

3  their rights of "free speech, freedom of association and to

4  petition for redress of grievances" (Complaint ¶ 90) were violated

5  by Private Defendants. The only allegation that clearly pertains to

6  their First Amendment claim is a single, isolated statement that

7  defendants would "arriv[e] on the scene at [Ms. Corona's] home each

8  time she tried to associate with Occupy Fights Foreclosures and

9  then demand[] identification of all individuals present

10  intimidating any assertion of rights." (Id. ¶ 125.) However, this

11  pleading does not establish any connection between the purported

12  acts of the LAPD officers, presumably the party that arrived at the

13  Property demanding identification, and any acts by Private

14  Defendants.[6] There is no allegation that the LAPD officers went to

15  the Property to demand identification of present OFF members at the

16  direction of or in coordination with Private Defendants. Therefore,

17  Plaintiffs have not stated a claim against the Private Defendants

18  for violation of the First Amendment, and the Court GRANTS the

19  Motion with leave to amend as to Plaintiffs' First Amendment claim

20  against Private Defendants.

21    With regard to Plaintiffs' Fourth Amendment claim, Plaintiffs

22  have pled sufficient facts to give rise to a plausible claim

23  against Bank of America. Plaintiffs allege that "Bank of America

24  called the Los Angeles Police Department on a Friday late morning

25

26    [6]Plaintiffs' Complaint is unclear in this regard. Further, the
    Complaint is unclear as to which acts by which defendants
27  purportedly violated Plaintiffs' First Amendment rights. Should
    Plaintiffs choose to amend, any amended complaint should clarify
28  the predicate acts upon which Plaintiffs seek to base this claim.

1  to early afternoon and demanded that the locks be changed and all
2  persons immediately evicted from the [Property] on or about January
3  18, 2013." (Complaint ¶ 41.) Further, Plaintiffs allege that "LAPD
4  officer Gonzalez ... allowed Bank of America's agent, a locksmith,
5  to change the locks on the [Property] and erect a 15 to 20 feet
6  chicken-wire fence around the [Property]." (Id. ¶ 95.) Further,
7  Plaintiffs allege that on January 22, 2013, Bank of America's
8  representative Michael Anz, as well as LAPD officers, were present
9  when Plaintiffs were forced from the Property, with some of their
10  belongings already loaded into a moving truck. (Id. ¶¶ 100-04.)
11      These facts give rise to a plausible claim that LAPD and Bank
12  of America, through Michael Anz, were engaged in "joint action"
13  such that Anz and Bank of America could have been acting "under
14  color of law" when they seized Plaintiffs' personal property from
15  the home and forced Ms. Urenia from the Property. Where police
16  officers do more than merely "stand by" in case of trouble, but
17  instead affirmatively participate in assisting private actors in
18  effectuating an eviction or repossession of property, the private
19  actors may be said to be acting under color of law. Howerton v.
20  Gabica, 708 F.2d 380, 383-84 (9th Cir. 1983) ("This case involves
21  more than a single incident of police consent to 'stand by' in case
22  of trouble. Police were on the scene at each step of the
23  eviction... The actions of [the officer] created an appearance that
24  the police sanctioned the eviction." ); see also Harris v. City of
25  Roseburg, 664 F.2d 1121, 1127 (9th Cir. 1981) ("[T]here may be a
26  deprivation within the meaning of § 1983 ... when the officer
27  assists in effectuating a repossession over the objection of the
28  debtor."). Here, Plaintiffs' alleged facts indicate that the LAPD

1   officers did more than merely "stand by" when Bank of America

2   locked Plaintiffs out of the Property, evicted Plaintiffs from the

3   Property, and took possession of Plaintiffs' personal belongings.

4   However, the alleged facts do not demonstrate that Public Storage

5   performed any acts jointly with LAPD officers, such that any acts

6   performed by Public Storage were not performed "under color of

7   law." Therefore, the Court DENIES the Motion as to Plaintiffs'

8   Fourth Amendment claim against Bank of America and Michael Anz and

9   GRANTS the Motion with leave to amend as to Plaintiffs' claim

10  against Public Storage.[7]

11         B. RICO Claims

12        The elements of a civil RICO claim are "(1) conduct (2) of an

13  enterprise (3) through a pattern (4) of racketeering activity."

14  Rezner v. Bayerische Hypo-Und Vereinsbank AG, 630 F.3d 866, 873

15  (9th Cir. 2010). Private Defendants argue that Plaintiffs' RICO

16  claim should be dismissed because (a) Plaintiffs fail to allege

17  facts showing the existence of an enterprise and (b) Plaintiffs

18  fail to allege facts showing the existence of a pattern of

19  racketeering activity. (Docket No. 25-1, pp. 11-14.) Further,

20  Private Defendants argue that Plaintiffs' RICO conspiracy claim

21  fails because the underlying RICO claim fails. (Id. at 14-15.)

22  Finally, Private Defendants argue that there is no cognizable claim

23  for aiding and abetting a civil RICO claim. (Id. at 15.)

24

25        [7]The Court expresses some doubt as to whether the facts in
    this case will establish that any underlying Fourth Amendment
26  violation occurred in the eviction and repossession process.
    However, as Private Defendants offered no substantial or convincing
27  argument as to why Plaintiffs' facts do not establish a violation
    of their right to be free from unreasonable searches and seizures,
28  either in their Motion or upon reply, the Court declines to dismiss
    the claim on that basis.

1   An "enterprise" is a "group of persons associated together for
2   a common purpose of engaging in a course of conduct." <u>United States</u>
3   <u>v. Turkett</u>, 452 U.S. 576, 583 (1981). To plead the existence of an
4   enterprise, a plaintiff must allege "an ongoing organization,
5   formal or informal, and by evidence that the various associates
6   function as a continuing unit." <u>Id.</u>; <u>see also</u> <u>Odom v. Microsoft</u>
7   <u>Corp.</u>, 486 F.3d 541, 552 (9th Cir. 2007).

8   The Court finds that Plaintiffs have failed to plead the
9   existence of an ongoing enterprise between Defendants. Plaintiffs
10  conclusorily plead that Defendants engage in an ongoing enterprise
11  by which Defendants routinely conduct post-foreclosure activities
12  exactly the way they happened to Plaintiffs in this case:
13  Defendants change the locks on foreclosed properties, lock up
14  personal property inside the foreclosed residence, refuse to
15  coordinate a way to return the personal property to its owner, haul
16  the property to Public Storage, and force the owner to sign a
17  release and lease agreement in order for him or her to obtain the
18  personal property. (Complaint ¶ 162.) However, Plaintiffs allege no
19  facts that would suggest the existence of an ongoing enterprise;
20  instead, Plaintiffs' only factual allegations relate to these
21  actions being performed *once*, to *their* personal property. <u>See</u>
22  <u>Gamboa v. Trustee Corps</u>, 2009 WL 656285, at *5-6 (N.D. Cal. 2009)
23  (finding that plaintiffs failed to plead a RICO claim where the
24  complaint is "focused on one foreclosure sale" and does "not
25  describe any other attempted foreclosure or loan collection
26  activities" but makes only "the conclusory allegation" of a pattern
27  or practice); <u>Martinez v. Quality Loan Service Corp.</u>, 2009 WL
28  586725, at *8 (C.D. Cal. 2009) (same). Therefore, Plaintiffs have

1   not alleged sufficient facts to support the existence of an ongoing

2   enterprise.[8] Therefore, their RICO claim fails.[9]

3       Plaintiffs also bring a RICO conspiracy claim. (Complaint ¶¶

4   193-98.) As their underlying RICO claim is insufficiently pled, the

5   conspiracy claim fails as well. See Howard v. America Online, Inc.,

6   208 F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a

7   conspiracy to violate RICO existed if they do not adequately plead

8   a substantive violation of RICO.").

9       Finally, Plaintiffs attempt to assert a cause of action for

10  "aiding and abetting" RICO violations. (Complaint ¶¶ 199-206.) The

11  Third Circuit has found that no private right of action exists for

12  aiding and abetting a RICO violation. Rolo v. City Investing Co.

13  Liquidating Trust, 155 F.3d 644, 657 (3d Cir. 1998) (adopting the

14  reasoning of Central Bank of Denver, N.A. v. First Interstate Bank

15  of Denver, N.A., 511 U.S. 164 (1994), which held that there was no

16  private right of action for aiding and abetting a violation of

17  Section 10(b) of the Securities and Exchange Act). At least one

18

19      [8]Plaintiffs also argue that they have pled facts regarding a
20  statistical increase in short-term tenancies at Public Storage
    facilities and that this increase implies that Defendants' actions
    toward Plaintiffs have been repeated many times. (Opp. to Mtn.,
21  Docket No. 46, p. 7; see Complaint ¶¶ 70-75.) However, a mere
    increase in short-term rentals at Public Storage, without more, is
22  insufficient to support Plaintiffs' allegation of an ongoing
    enterprise between the Private Defendants and the City of Los
23  Angeles. There are many possible explanations for such a
    statistical trend. Without facts suggesting any sort of link
24  between the trend and repeated acts similar to those alleged in
    this action, these statistics are insufficient to support a
25  plausible RICO claim.

26      [9]The Court does not reach the additional issues of whether
    Plaintiffs have properly alleged a "pattern" of racketeering
27  activity, nor whether Plaintiffs have pled sufficient facts to
    support the predicate acts of mail fraud and wire fraud for their
28  RICO claims.

district court in the Ninth Circuit has adopted the Third Circuit approach. In re Countrywide Financial Corp. Mortgage Marketing and Sales Practice Litigation, 601 F.Supp.2d 1201, 1219 (S.D. Cal. 2009). The Court agrees with this approach and concludes that there is no private right of action for aiding and abetting a RICO violation. Further, in the absence of a sufficiently pled predicate RICO violation, Plaintiffs' derivative claim for aiding and abetting would fail even if they could, in theory, bring such a claim. See Westways World Travel, Inc. v. AMR Corp., 265 F. App'x. 472, 474 (9th Cir. 2008) ("Because the [plaintiffs] cannot maintain a substantive RICO claim, their derivative RICO claim[] for aiding and abetting ... also fail[s]."). Therefore, the Court GRANTS the Motion as to all of Plaintiffs' RICO claims with leave to amend. Any amendment must correct the deficiencies identified in this Order.

C. Sherman Act Claims

A claim under Section 2 of the Sherman Act requires "(1) the defendant possessed monopoly power in the relevant market; (2) the defendant willfully acquired or maintained that power through exclusionary conduct; and (3) the defendant's conduct caused antitrust injury." InfoStream Group, Inc. v. PayPal, Inc., 2012 WL 3731517, at *4 (N.D. Cal. 2012). Private Defendants argue that Plaintiffs have not stated a claim under Section 2 of the Sherman Act because (a) they have not suffered an antitrust injury and (b) they have not alleged facts showing Public Storage's market power.[10] (Docket No. 25-1, pp. 15-17.)

---

[10]Plaintiffs' antitrust claims appear to be asserted only
(continued...)

1    Though not made explicit, it appears that Plaintiff's Sherman
2    Act claims are based on an alleged agreement between Public Storage
3    and Bank of America that all personal property recovered from homes
4    upon which Bank of America has foreclosed will be taken to a Public
5    Storage facility. Plaintiffs have not alleged, however, that as a
6    result of that purported agreement, they have suffered a cognizable
7    antitrust injury. An antitrust injury "means harm to the process of
8    competition and consumer welfare." <u>LiveUniverse, Inc. v. MySpace,</u>
9    <u>Inc.</u>, 304 F. App'x. 554, 557 (9th Cir. 2008). Even taking
10   Plaintiffs' allegations as true and accepting that there was some
11   sort of agreement between Public Storage and Bank of America,
12   Plaintiffs still plead no facts indicating that they were charged
13   higher prices or otherwise harmed by any purported lack of
14   competition between Public Storage and other self-storage entities.
15   Plaintiffs do not allege any facts suggesting that the alleged
16   harms to Plaintiffs flow from the fact that Public Storage controls
17   a large market share of the self-storage industry. Plaintiffs could
18   have suffered the same alleged harmed in the same manner had their
19   personal belongings been removed from the Property and taken to *any*
20   storage facility. Therefore, Plaintiffs have not sufficiently pled
21   the existence of an antitrust injury. As a result, their Sherman
22   Act claims fail, and the Court GRANTS the Motion as to these
23   claims.[11]

24   _____

25   [10](...continued)
     against Public Storage.

26   [11]The Court does not reach the question of whether Plaintiffs
27   have alleged sufficient facts demonstrating that Public Storage has
     monopoly power, though the Court expresses doubt that the facts, as
28   currently alleged, are sufficient to support such a finding.
                                                    (continued...)

D. <u>UCL Claims</u>

Plaintiffs allege their UCL claim only against Bank of America.[12] Plaintiffs premise their claim on Bank of America's alleged practice of "evict[ing] homeowners and search[ing] and seiz[ing] their personal property, when there is no valid search warrant and no arrest ... made." (Complaint ¶ 223.) Further, Plaintiffs allege that Bank of America threatens "to arrest and take property without due process as a bargaining tool in order to coerce those to stop associating with the OFF movement to chill free speech." (<u>Id.</u> ¶ 225.)

To the extent that Plaintiffs' underlying claims survive, or are amended to state a claim, the Court finds that the UCL claim survives under the "unlawful" prong of Cal. Bus. & Prof. Code § 17200. To the extent that the underlying claims are insufficient, Plaintiffs have failed to state a claim. To the extent that Plaintiffs seek to base their § 17200 claim on predicate acts that are not unlawful, but nevertheless are "unfair" or violate public policy, Plaintiffs must amend their complaint to state with sufficient specificity which acts allegedly fall into these categories.

E. <u>Claim to Set Aside Foreclosure</u>

---

[11](...continued)
Moreover, there are no facts in the complaint demonstrating Public Storage's willful acquisition and maintenance of monopoly power.

[12]Some of the allegations appear to indicate that Plaintiffs wish to assert this cause of action against other defendants. However, Plaintiffs specify in their section heading that they wish to assert this claim against only Bank of America. (<u>See</u> Complaint, pg. 36.)

Plaintiffs base this claim for relief on their allegation that the Deed of Trust on the Property contained a provision requiring Bank of America to follow HUD guidelines, including counseling, to attempt to avoid foreclosure and that Bank of America failed to follow those requirements. (See Complaint ¶¶ 238-42.) Private Defendants advance four arguments as to why Plaintiffs' claim to set aside the foreclosure sale should be dismissed: (1) the alleged failure to follow HUD guidelines cannot provide a basis for setting aside a foreclosure; (2) res judicata bars Plaintiffs' claim; (3) Plaintiffs have failed to allege tender; and (4) Plaintiffs' claim is barred by the statute of limitations.

The Court notes at the outset that it appears that Ms. Urenia lacks standing to pursue this claim, as she is not named on the Deed of Trust. (See RJN, Docket No. 25-2, Exh. A.) Therefore, the Court's analysis will focus solely on whether Ms. Corona has stated a claim to set aside the foreclosure.

As to Private Defendants' first argument, the sole case cited in support of their contention that the failure to follow HUD guidelines is insufficient grounds to set aside a foreclosure does not support that conclusion. See Pfeifer v. Countrywide Home Loans, Inc., 211 Cal.App.4th 1250, 1269-79 (2012). The court in that case found that the mortgagors could assert a cause of action to prevent the foreclosure sale based on violations of HUD regulations, as incorporated into the deed of trust. Id. at 1279. The quotation offered by Private Defendants does not capture the holding of the case. Therefore, the Court does not dismiss Plaintiffs' claim on this basis.

As to Private Defendants' statute of limitations argument, the sole case cited in support of their contention that the claim is time-barred expressly limits the three-year statute of limitations to claims to set aside a foreclosure "based on fraud, a fraudulent conspiracy or breach of statutory duty." Susilo v. Wells Fargo Bank, N.A., 796 F.Supp.2d 1177, 1195 (C.D. Cal. 2011). In this case, Plaintiffs have a plausible claim to set aside the foreclosure arising from their *contractual* rights in the Deed of Trust, which requires the lender to follow HUD guidelines prior to instituting foreclosure proceedings, rather than a claim based on fraud or on breach of a statutory duty. The statute of limitations for contract claims is four years under California law. Cal. Code Civ. Proc. § 337(1). Therefore, the Court does not dismiss Plaintiffs' claim on this basis.

With regard to Private Defendants' other two arguments, the Court finds that Plaintiffs' pleading is insufficient for the Court to determine at this juncture whether the tender requirement should be excused because the foreclosure sale was void or whether the issues adjudicated in the state court proceeding should bar Plaintiffs' pursuit of their current claims under the doctrine of res judicata, as both determinations depend upon the exact nature of Plaintiffs' claims. Plaintiffs have failed to plead sufficient facts to identify which purported acts or failures to act constituted violations of HUD regulations, as incorporated into the Deed of Trust. Plaintiffs merely allege that the HUD regulations were incorporated into the Deed of Trust (Complaint ¶ 25) and that the foreclosure occurred "[w]ithout following HUD regulations" (Id. ¶ 26). Plaintiffs reiterate that "Bank of America never followed

17

the HUD guidelines outlined in the Deed of Trust ..., such as providing a counseling session to avoid foreclosure." (Id. ¶ 239.) These allegations fail to identify with particularity the course of events that Plaintiffs allege were wrongful, nor the specific HUD provisions that made them wrongful. Therefore, the Court GRANTS the Motion to dismiss this claim without prejudice. Any amended complaint must plead facts in support of this claim and the HUD provisions allegedly violated with specificity.

**IV. Conclusion**

For the foregoing reasons, the Court GRANTS the Motion IN PART and DENIES the Motion IN PART. Plaintiffs may amend their complaint consistent with the deficiencies identified in this Order. Any amended complaint must be filed on or before June 6, 2014.

IT IS SO ORDERED.

Dated: May 22, 2014

DEAN D. PREGERSON
United States District Judge

18