1  Lenore L. Albert, Esq.   SBN 210876
2  LAW OFFICES OF LENORE ALBERT
3  7755 Center Avenue, Suite #1100
   Huntington Beach, CA 92647
4  Telephone (714) 372-2264
5  Facsimile (419) 831-3376
   Email: lenorealbert@msn.com
6

7  Attorney for Plaintiff, Victoria Urenia, an individual;
   Soledad Corona, an individual; Cathelene Hughes, an individual; Javier Hernandez, an
8  individual; o*n behalf of themselves and all others similarly situated*

9

10           **UNITED STATES DISTRICT COURT**
11           **CENTRAL DISTRICT OF CALIFORNIA**

12  VICTORIA URENIA, an individual;          CASE NO. CV13-01934 DDP-AJW
13  SOLEDAD CORONA, an individual;
    CATHELENE HUGHES, an
14  individual; JAVIER HERNANDEZ, an
    individual; BRENDA HERNANDEZ,            **FIRST AMENDED CLASS ACTION**
15  an individual; and ROES 4 through 10,    **COMPLAINT**
16  *on behalf of themselves and all others*   **[Demand for Jury Trial as to Part]**
17  *similarly situated*,

18
             Plaintiffs,
19  vs.

20

21  PUBLIC STORAGE, a real estate
    investment trust; CITY OF LOS
22  ANGELES,  a governmental entity;
    BANK OF AMERICA, N.A.;
23  MICHAEL ANZ; and DOES 1 through
24  10, inclusive,

25
             Defendants.
26  ──────────────────────────────────
    Plaintiffs VICTORIA URENIA, SOLEDAD CORONA, CATHELENE
27
    HUGHES, JAVIER HERNANDEZ, and BRENDA HERNANDEZ, on behalf of
28

                              1
           **FIRST AMENDED CLASS ACTION COMPLAINT**
           Urenia v Public Storage  CV 13-01934 DDP (AJWx)

themselves and all others similarly situated (referred to as "plaintiff" or "plaintiffs"), by and through their attorney, now brings this action against defendants, PUBLIC STORAGE, a real estate investment trust; CITY OF LOS ANGELES, a governmental entity; BANK OF AMERICA, N.A.; MICHAEL ANZ; and DOES 1 through 10, and each of them so captioned, (collectively the "Defendants") and alleges the following on information and belief, except as to those allegations which pertain to the Plaintiffs and are within their personal knowledge:

## JURISDICTION

1.      The Court has subject matter jurisdiction over this action under 28 USC §1331 and/or 28 USC § 1332 wherein this is a class action over $5,000,000.00 where at least one plaintiff is diverse from one defendant.

## PARTIES

2.      Plaintiff, Victoria Urenia, at all times mentioned herein relevant to this complaint was a college student and daughter of Soledad Corona, the true owner of real property commonly known as 2200 Daly Street, Los Angeles, California 90031.

3.      Plaintiff, Soledad Corona, at all times mentioned herein relevant to this complaint was the owner of real property commonly known as 2200 Daly Street, Los Angeles, California 90031.

4.      ROE Number 1 has been identified as plaintiff, Cathelene Hughes, who at all times mentioned herein relevant to this complaint, was the owner of real property commonly known as 9815 S. Wall Street, Los Angeles, California 90003. Knowing the true identity of Roe Number 1, plaintiff now substitutes the name of Cathelene Hughes for Roe 1.

5.      ROE Number 2 has been identified as plaintiff, Javier Hernandez, who at all times mentioned herein relevant to this complaint, was the owner of real property commonly known as 14620 Leadwell Street, Van Nuys, California 91405. Knowing the

**2**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

true identity of Roe Number 2, plaintiff now substitutes the name of Javier Hernandez for Roe 2.

6.      ROE Number 3 has been identified as plaintiff, Brenda Hernandez, who at all times mentioned herein relevant to this complaint, was the owner of real property commonly known as 14620 Leadwell Street, Van Nuys, California 91405. Knowing the true identity of Roe Number 3, plaintiff now substitutes the name of Brenda Hernandez for Roe 3.

7.      Defendant Public Storage is the largest self-storage company in the world with over 2,400 locations worldwide and the second largest publicly traded real estate investment trust ("REIT") in the world, with its principal place of business in Maryland and regularly conducts business in the State of California.

8.      Defendant Bank of America, N.A., ("Defendant") is a Delaware business entity, which allegedly has its "headquarters" in Simi Valley, California where the acts occurred; its principal place of business in North Carolina, and regularly conducts business in the State of California.

9.      Mike Anz, is a resident of Los Angeles County and has acted as an authorized agent, co-conspirator, aider-abettor, and/or representative of Bank of America, N.A. for all acts alleged in this complaint.

10.     The City of Los Angeles is a public governmental entity that employed Officer Taylor, Officer Rubio, Officer Chacon, Officer Gonzalez, Officer Loomis, and Officer Brazo of the Los Angeles Police Department ("LAPD") who were acting under color of law.

11.     Plaintiff does not know the true name and capacity of the defendants DOES 1 through 10, inclusive, and as such names said defendants by such fictitious names. Plaintiff will amend the complaint to state the true name and capacity of the DOE defendant(s) when such information is ascertained.

3

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

12.     Plaintiff is informed and believes and alleges thereon that each defendant is responsible in some manner for the occurrences alleged in this complaint, and that plaintiff's damages were proximately caused by the defendants.

13.     Plaintiff is further informed and believes and alleges thereon that each defendant was the agent, servant, representative, and/or employee of their co-defendants, and in doing the things hereinafter alleged were acting in the scope of their authority as agents, servants, representatives, and/or employees, and with the permission and consent of their co-defendants.

14.     Additionally, plaintiff is informed and believes and alleges thereon that each defendant assisted, aided and abetted, adopted, ratified, approved, or condoned the actions of every other defendant and that each corporate defendant, if any, was acting as the alter ego of the other in the acts alleged herein.

## FACTUAL ALLEGATIONS

15.     Defendant Public Storage claims to be the largest self-storage company in the world.

16.     Public Storage, Inc. was formed in 1980.  Effective June 1, 2007, following approval of shareholders, Public Storage, Inc. was reorganized to Public Storage, a Maryland Real Estate Investment Trust (REIT).

17.     Public Storage REIT is a fully integrated, self-administered, and self-managed REIT whose principal business activities include the acquisition, development, ownership and operation of self-storage facilities which offer storage space for lease, generally on a month to month basis, for business and personal use.

18.     It is the largest owner and operator of self-storage facilities in the United States.

19.     It has made a net profit exceeding $100,000,000.00 from 2011 through 2012.

**4**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

20.     It holds a monopoly on the market and market power over its competitors and its stock has surged from $48.00 per share to $148.00 per share from March 2009 to March 2012 during the financial foreclosure crisis.

21.     Public Storage is also the second largest publicly traded real estate investment trust ("REIT") in the world with its principal office for doing business in Baltimore, Maryland.

22.     Public Storage, Inc. was a California Corporation and the REIT still operates in Glendale, California.

23.     Public Storage is holding plaintiffs' personal property that was transported to it by co-defendants without plaintiffs' consent.

24.     Bank of America, N.A. is one of the largest financial institutions in the United States.

25.     It holds market power in the financial industry which now approximates nearly 47% of the gross domestic product in the United States.

## 2200 Daley Street, Los Angeles, CA

26.     Ms. Corona was a homeowner who owned a home located at 2200 Daly Street, Los Angeles, California that was secured by deed of trust on a loan procured from Countrywide Bank, N.A. that was guaranteed by HUD.

27.     Bank of America asserted Ms. Corona defaulted and took her home by credit bid in 2009 while Ms. Corona was in the midst of a loan modification.

28.     The Deed of Trust clearly protected Ms. Corona under HUD. Paragraph d of section 10 on page 5 clearly stated: "Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclosure if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary."

**FIRST AMENDED CLASS ACTION COMPLAINT**
Urenia v Public Storage  CV 13-01934 DDP (AJWx)

29.     Without following HUD regulations, defendants caused a Notice of Trustee's Sale to be recorded on October 29, 2009 in the Los Angeles County Recorder's Office (Doc. No. 20091633161).

30.     Bank of America never followed the HUD preconditions contained in the Deed of Trust before nonjudicially foreclosing making any trustee's deed acquired by the nonjudicial foreclose *void ab initio*.

31.     Bank of America took the clouded and bad title to the home on December 14, 2009 after press releases of their own moratorium in 2009 had been running since October of that year where they advertised that they would suspend all foreclosure auctions in the face of their admission of widespread fraudulent procedures in their foreclosure process.

32.      This is related to Edusada/Corona v Bank of America which initially started out as Baldwin v Bank of America but Baldwin state action was dismissed and on appeal so the procedural stance of the related proceedings is convoluted and fractured.

33.     Nevertheless, as to Ms. Soledad Corona, Bank of America then obtained a judgment for possession against her in 2010.

34.     However, they never actually obtained possession.

35.     In April 2012 Soledad Corona decided to join Occupy Fights Foreclosures (OFF) a local group started by the Occupy Wall Street movement which is a movement of the 99% protesting financial greed from financial institutions and market monopolies like Bank of America and REITS such as Public Storage.

36.     She started to attend their weekly meetings and partake in their public demonstrations.

37.     When the holidays approached in 2012, CNN Money ran a story stating "Homeowners facing foreclosure just received an early Christmas present:  They won't

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

be evicted from their homes over the holidays… "Bank of America [] said it will [] put a halt to foreclosure evictions both for loans it owns and for those it services for investors during the holiday period." (CNNMoney dated December 3, 2012)

      a. American Banker published a similar article on December 6, 2012 captioned "Major Banks Halt Evictions for the Holidays."

      b. The story stated, "B of A did not specify dates on which it will halt foreclosures, but spokesman Rick Simon said in an email "it is the bank's policy to avoid foreclosure sales **or displacement** of homeowners or tenants around the Christmas holiday." [bold added]

38. Ms. Corona was shocked to receive a "NOTICE TO VACATE" on December 6, 2012 which stated "You are Ordered to Vacate the Premises Described in the Writ Not Later than 12-11-2012" which was  folded inside a Trader Joe's circular and placed into the slats of her fence surrounding her home which she still occupied.

39. It was purportedly signed by a deputy of the Los Angeles County Sheriff's department based on a document representing itself to be a Writ of Possession executed on November 29, 2012 which was not color stamped but in a black and white copy with John A Clarke and Angela Comick stamped thereon but in the opposite direction of the department's custom and practice.

40. The Sheriffs then arrived on Thursday December 13, 2012 to lock Ms. Corona out of the home during the moratorium period.

41. Thereafter the Los Angeles Sherriff's Department allowed Ms. Corona to return to her home on or about December 23, 2012 and placed a "stay" on their own records for lockouts.

42. OFF members had placed tents in her front yard and hung signs from her home in protest during this time period.

43.     Community events were held at the home and Bank of America, LAPD and all other defendants were made aware of her return with the consent of the LASC.

44.     Nevertheless, without warning, Bank of America called the Los Angeles Police Department on a Friday late morning to early afternoon and demanded that the locks be changed and all persons immediately evicted from the home on or about January 18, 2013.

45.     They refused Ms. Corona or her daughter to obtain their personal belongings.

46.     Then on February 28, 2013 Mike Anz, a representative for Bank of America came to Ms. Corona's home and took her property from her house.

47.     She asked if she could have her things and Mike Anz refused.

48.     She asked Bank of America if she could have her things and Bank of America refused.

49.     She asked the Los Angeles Police Department if she could have her things and the Los Angeles Police Department refused.

50.     She later learned that Mike Anz took her belongings to Public Storage located at 4009 Mission Road, Los Angeles, California.

51.     So she went to Public Storage and spoke to x and asked if she could obtain her things.

52.     Public Storage said no, they were no longer her things but Mike Anz's things.

53.     She asked Mike Anz if she could have her things and he said no.

54.     She asked Bank of America if she could have her things and Bank of America said no.

55.     Ms. Corona's personal belongings were taken to Public Storage located 4009 Mission Road by Mike Anz.

**FIRST AMENDED CLASS ACTION COMPLAINT**
Urenia v Public Storage  CV 13-01934 DDP (AJWx)

56.     When she discovered where Mike Anz took her property, she immediately went to Public Storage to ask for her belongings.

57.     Public Storage insisted that she needed to sign a release and rental lease agreement with Public Storage first.

58.     Ms. Corona explained she could not sign the seven page document because it contained statements in the document that were untrue.

59.     For example, the agreement stated that none of Ms. Corona's property contained important documents, personal identification, perishables, sentimental items or perishables, all of which was not true.

60.     However, Mike Anz took her important documents and other items and hid them in the Public Storage facility located on Mission Road in Los Angeles.

61.     In mid-March, Bank of America and Mike Anz's attorney disclosed the property had been taken to Public Storage on Mission Road in Los Angeles.

62.     So plaintiff Corona went to the facility on March 12, and on or about March 10, 2013 to obtain her belongings or find out what she needed to do to obtain her belongings.

63.     She spoke to Public Storage's employee, named Erica both times who said she understood plaintiff considered these items stolen without her permission but could not give her the items or any further information or assistance.

64.     At 4:38PM Mike Anz's attorney contacted Ms. Corona's attorney and said that Ms. Corona could obtain her belongings the following day at 11:00AM from Mike Anz.

65.     So Ms. Corona returned to Public Storage on March 16, 2013 with approximately seven other people to help her move.

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

66.     However, her attorney was presented with a seven page document that was captioned Lease Agreement and contained many provisions that did not apply and were contrary to what was the truth.

67.     So she wrote disclaimers on the documents noting that these

68.     Alma, employee of Public Storage refused to give Ms. Corona and Ms. Urenia access to the storage unit on the grounds it was Public Storage's business practice to require the foreclosed homeowner to sign the lease agreement without any alterations.

69.     Plaintiff is informed and believes and alleges thereon that there is an injury within the area of the economy that is endangered by a breakdown in the economy.

70.     In fact approximately ten (10) different people had their personal belongings stored at the Ms. Urenia and Ms. Corona's home and none of them were able to retrieve their property, including but not limited to Christina Rodriguez, Greg Sidnam, Esperanza Corona, Maria Rivera, Lyle Rivera, and Alejandra Barajas.

71.     Tens of thousands of dollars' worth of personal property was taken.

72.     Unbeknownst to plaintiff, the defendants had formed an organization to capitalize on homeowners who were foreclosed upon for their own further profit.

73.     The Bank Defendants and Public Storage defendants are some of the largest financial institutions in the world.

74.     Los Angeles is their largest market. (Press conference on quarter three of 2012)

75.     San Francisco is their second largest market. (Press conference on quarter three 2012)

76.     Tenancy of one year or more from 2010 54.9, 2011 55.5 and 2012 55% were constant but there was more tenant occupancy (93%) in 2012.

77.     Pricing has been consistent and reduced the level of discounting.

78.     Occupancy of 92.3% at the end of October 2012.

10

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

79.     The Public Storage defendants are the largest self-storage institutions in the world.

80.     Prior to becoming a REIT in 2007 Public Storage bought Shugard through financing by KeyBank (now US Bank).

81.     By converting from a corporate structure to a security (a REIT) Public Storage became a significant part of Wall Street and finance.  It became the Second Largest REIT in the world.

82.     Bank of America knew in 2007 of the impending financial collapse and that the residential market was going to collapse leading to massive foreclosures which in turn would create lockouts and the need to trash out the personal property of the former homeowners.

83.     Financial institutions could make money out of the trash out process by creating a REIT that took over the market share for storage space such as Public Storage.

84.     After the financial collapse, not only did Public Storage increase tenancy to over 90%, but Bank of America's assets increased from $1 trillion to over $200 trillion by 2013.

85.     LAPD in assisting with the lockouts where the homeowner's belongings are forced into storage meant that the LAPD did not have "deal with" personal property of the newly unhoused and homeless persons on the streets.

86.     Over 972,500 California residential homes were foreclosed upon during this same time period.

87.     The lease agreements were emailed, mailed through the US Mail or faxed to the homeowner and/or their agent.  The lease agreements contained untrue statements about the type of contents in storage and their value.  It unfairly limited liability to a nominal amount such as $5,000.00 and was being used as an extortionate measure to release liability in exchange of the homeowner to get their belongings.

11

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

88.     As a consequence, it was cheaper for Bank of America to have the property hauled off of the property and stored rather than trashing out the home that could open up their liability if it was later discovered that the lockout was unlawful or that they had stolen valuable items and property of the plaintiffs.

89.     Traditionally, certain agreements have been "conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use" because of "their pernicious effect on competition and lack of any redeeming virtue." *Northern Pacific Ry. v. U.S.*, 356 US 1, 5 (1958).

90.     Such agreements are considered illegal, per se. *U.S. v Socony-Vacuum Oil Co. Inc.*, 310 US 150 (1940).

91.     Furthermore, the actions and failure to act by the defendants and each of them violated California Penal Code §422.7.

92.     Ms. Corona continues to fight to maintain possession of her home.

### **155 East 99th Street, Los Angeles, CA (9815 S. Wall Street, Los Angeles, CA 90003)**

93.     Ms. Cathelene Hughes was an elderly homeowner who owned a home located at 9815 S. Wall Street, Los Angeles, California that was secured by deed of trust on a loan procured from Full Spectrum, an agent and/or loan seller of Countrywide Home Loans, Inc. and sent to Countrywide Home Loans, Inc. which Bank of America, N.A. later succeeded to by way of merger.

94.     After Bank of America, N.A. succeeded by way of merger to Countywide Home Loans, Inc., Bank of America, N.A. asserted Ms. Hughes defaulted and purportedly sold her home "pro tanto" on August 13, 2012 as attested to by "Crystal Espinoza" and notarized by "Cheryl Grech."

**12**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

95.    The Deed of Trust recorded in the Los Angeles County Recorder's office was highly suspect.  The name "Cathlene" was placed throughout the deed of trust and then later crossed out and replaced with "Cathelene" in the deed of trust that was recorded.  The deed of trust also referred to the address as 155 East 99th Street, Los Angeles, CA as opposed to the address as known to Ms. Hughes of 9815 S. Wall Street, Los Angeles, CA 900003.

96.    The loan appears it was secured by Fannie Mae/Freddie Mac.

97.    After the sale, Ms. Hughes sought out help.

98.    She became a member of Occupy Fights Foreclosures ("OFF") in or about December 2012.

99.    She attended OFF meetings and started to partake in public demonstrations to assert homeowner's rights, including but not limited, the escort of Ms. Soledad Corona back into her home during the holidays.

100.    When she was at Ms. Corona's home she noticed the LAPD were there taking photos and trying to identify everyone.

101.    On or about January 20 or 21st, 2013 Ms. Hughes went shopping.

102.    She was gone for about thirty minutes when she received a call from a neighbor informing her that the Los Angeles Police Department was at her home.

103.    She hurriedly left the store and rushed back home to find approximately ten (10) LAPD officers there, including but not limited to Officer Loomis and Officer Brazo.

104.    A locksmith and another person from the bank were at her home.

105.    All of her personal property was still in the home.

106.    As she approached her home, the policemen refused her access to her home and kicked her off of the lawn.

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

107.   She told the police officers that all of her belongings were in the home and she needed them but they refused.  An officer told her that she needed to move her car and leave.

108.   Ms. Hughes told the bank representatives and the LAPD that she was a senior citizen and that they were harassing her, but they just ignored her.

109.   Ms. Hughes was shaken and distraught so she called the Elder Abuse hotline requesting help.

110.   A social worker arrived on the scene and tried to explain to the police and the bank's agents that Ms. Hughes needed her belongings and what they were doing was wrong.

111.   However, the police refused to listen to the social worker, also.

112.   Ms. Hughes and the social worker were too intimidated by the fear of force and/or threat of force to disobey the officer's instructions and they remained outside of the property.

113.   The Officers did not have a valid search and seizure warrant or probable cause.

114.   The LAPD stayed there with the bank's representatives and agents for approximately 2 to 3 hours until the banks and officers were done with whatever they were doing inside and outside the home.

115.   LAPD Officer handed Ms. Hughes his card and said if anything was missing to come talk to him.

116.   Ms. Hughes lost her jewelry, collector coins, food, Mary Kay products totaling approximately $1,800, and other miscellaneous items.

117.   Her grandson, Sean Hughes who was also living with her lost all of his clothes and personal products.

118.   Her son, Dion Hughes lost clothes that were in the house also.

**FIRST AMENDED CLASS ACTION COMPLAINT**
Urenia v Public Storage  CV 13-01934 DDP (AJWx)

119.   They refused the Hughes family the right to obtain their personal belongings or enter the home.

120.   The property was sent to storage.

121.   Like Ms. Corona and Ms. Urenia, Public Storage insisted that Ms. Hughes needed to sign a release and rental lease agreement with Public Storage before she could see her things being stored there.

122.   As such, Ms. Hughes did not know what was missing until she signed a lease agreement with Public Storage which cost her $600.00 for 4 months.

123.   After she saw what had been stolen she went to the Los Angeles Police Department and asked to speak to the officer who gave her his card so she could report what was missing.

124.   However, the people at the police statement told her they wouldn't let her see him.  Ms. Hughes has two cards in her possession, and it is alleged on information or belief that the Officer who said he would assist if any of her property was missing was either Officer Loomis or Officer Brazo.

125.   Ms. Hughes and her family became homeless as of the day the LAPD and bank went to her home and forced her off of the property.

126.   Due to the stress of the lockout, including but not limited to losing her shelter and property, she started to become very ill.  She then had a stroke and was hospitalized for one week.

127.   To date she has paid approximately $2,000.00 to store her remaining property and she has never recovered her stolen property and still does not know the extent of damage to the property that was stored, if any.

128.   Ms. Corona explained she could not sign the seven page document because it contained statements in the document that were untrue.

129.   For example, the agreement stated that none of Ms. Corona's property contained important documents, personal identification, perishables, sentimental items or perishables, all of which was not true.

## 14620 Leadwell Street, Van Nuys, CA 91405

130.   Mr. Javier Hernandez and his sister, Brenda Hernandez were homeowners who owned a home located at 14620 Leadwell Street, Van Nuys, California that was secured by deed of trust on a loan procured from Countrywide Bank, N.A.

131.   Countrywide asserted the Hernandez family defaulted and recorded a notice of default in 2008.

132.   Bank of America asserted ownership of the loan as successor by merger with Countrywide Bank, N.A.

133.   A trustee's Deed upon Sale was recorded in 2011 asserting the property went to a mortgage backed securitized trust on a credit bid.

134.   After the sale, plaintiff's father was threatened to be deported if they did not vacate the property.

135.   Plaintiffs refused to vacate the property and his father was deported.

136.   Plaintiff Javier Hernandez decided to join Occupy Fights Foreclosures (OFF) a local group started by the Occupy Wall Street movement which is a movement of the 99% protesting financial greed from financial institutions and market monopolies like Bank of America and REITS such as Public Storage.

137.   He started to attend their weekly meetings and partake in their public demonstrations.

138.   Javier Hernandez had attended events at Soledad Corona's home and Soledad Corona had attended events at Javier Hernandez's home.

139.   OFF members had staged an occupation at this residence and tents and signs had been erected on the property.

16

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

140.   Community events were held at the home and Bank of America, LAPD and all other defendants were made aware of this protest.

141.   When the holidays approached in 2012, CNN Money ran a story stating "Homeowners facing foreclosure just received an early Christmas present:  They won't be evicted from their homes over the holidays… "Bank of America [] said it will [] put a halt to foreclosure evictions both for loans it owns and for those it services for investors during the holiday period." (CNNMoney dated December 3, 2012)

     a.   American Banker published a similar article on December 6, 2012 captioned "Major Banks Halt Evictions for the Holidays."

     b.   The story stated, "B of A did not specify dates on which it will halt foreclosures, but spokesman Rick Simon said in an email "it is the bank's policy to avoid foreclosure sales **or displacement** of homeowners or tenants around the Christmas holiday." [bold added]

142.   On December 27, 2012 Javier Hernandez and his family were locked out by Bank of America, the Los Angeles Police Department and the Los Angeles Sheriff's Department.

143.   The LAPD and LASD stormed the residence with 50 to 200 armed officers fully dressed in riot gear and assault weapons with SWAT team type vehicles at approximately 4:00AM to 5:00AM on December 27, 2012 while it was still dark.

144.   All of the occupants feared for their life and the life of their family members.

145.   The Officers did not have a valid search and seizure warrant or probable cause.

146.   There were six adults and four minor children living the home, including OFF supporters staging their protest.  They all lost their property, including but not limited to Javier Hernandez, Antonio Hernandez, Brenda Hernandez, Guadalupe

**FIRST AMENDED CLASS ACTION COMPLAINT**
Urenia v Public Storage  CV 13-01934 DDP (AJWx)

Hernandez, Alises Hernandez, Sadie Torres, Maria Cazares, Jamie Garcia, Willie Casarez, and Joe Cazares.

147.   After all persons in the home were seized by the LAPD and forcibly removed from the premises, a "clean up crew" came and took all of belongings out of the home without allowing the occupants to claim and retrieve their property.

148.   Plaintiff Brenda Hernandez was sleeping over at a friend's house.  She arrived home at 7:30AM that morning but she could not get to the house because the entire street was blocked off by the LAPD. Like the others, she was unable to remove her belongings from the home.

149.   In protest, OFF members and supporters had erected tents outside the home and they were "occupying" the home during the raid, also.

150.   The LAPD raided the items from OFF members and supporters and took the property, evicted, restrained and detained these supporters also who were present.

151.   In all, approximately one dozen people had their personal property lost and destroyed totaling tens of the thousands of dollars, when Bank of America had the LAPD raid the Hernandez home in the dark without a warrant or probable cause.

152.   Javier Hernandez was forced to sign a storage rental agreement with US Public Storage and paid $250.00 in order to see his property. Most of the items were stolen, damaged or destroyed.

## CLASS ALLEGATIONS

153.   <u>Class Definition</u>: Plaintiffs bring this suit as a class action on behalf of herself and all other similarly situated persons as a member of a Class defined as follows: All persons who were forced to sign a lease agreement with a storage company as a pre-condition to obtaining their personal property after being foreclosed upon. A second class of persons is defined as all persons who were forced out of their home by the Los

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

Angeles Police Department and/or Bank of America in violation of their Fourth Amendment Rights after being foreclosed upon.

154.   Excluded from the Class are the Court, defendants, and their affiliates, subsidiaries, current or former employees, officers, directors, agents, representatives, and their family members.

155.   <u>Numerosity</u>:  The persons who comprise the Plaintiff Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the Court.  Class members are so numerous and are dispersed throughout the United States that joinder of all Class members is impracticable. Class members can be identified, *inter alia*, through records maintained by the Defendants.

156.   <u>Common Questions of Fact and Law</u>:  Nearly all factual, legal, statutory, declaratory and injunctive relief issues that are raised in this Complaint are common to the Plaintiff Class and will apply uniformly to every member of the Plaintiff Class;

a.  Whether Defendant violated Cal Bus & Prof Code §§ 17200 and/or 17500;

b.  Whether Defendant's practice was "unlawful," "unfair," or "fraudulent" within the meaning of the Cal Bus & Prof Code §17200; and

c.  Whether Defendants violated plaintiffs' civil rights;

d.  Whether Defendants violated Antitrust laws;

e.  Whether Class members lost money or property as a result of Defendant's violations.

157.   The representative Plaintiff(s) will fairly and adequately represent and protect the interest of the Plaintiff Class, and have retained counsel who is competent and experienced in Class Action and foreclosure claims.  There are no material conflicts between the claims of the representative plaintiff and the members of the plaintiff class

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

that would make class certification inappropriate. Counsel for the plaintiff class will vigorously assert the claims of all members of the plaintiff class.

158. Defendants have acted or refused to act on grounds generally applicable to the class.

159. A class action is superior to other methods for the fast and efficient adjudication of this controversy and to avoid the risk of disparate and inconsistent rulings in different courts. A class action regarding the issues in this case does not create any problems of manageability.

160. The putative class action meets the requirements of Federal Rules of Civil Procedure 23(a), 23(b) (2) and 23(b) (3).

161. The nature of notice to the proposed class required and/or contemplated is the best practicable method possible and the contemplated defendant's list, when disclosed, would most likely be notice through media outlets, mailing, the internet and other general notices are contemplated to ensure notice.

### FIRST CAUSE OF ACTION
### CIVIL RIGHTS VIOLATION
### (Against All Defendants)

162. Plaintiff incorporates paragraphs 1 through 161 as though fully incorporated herein.

163. Plaintiff brings this claim on their behalf and on behalf of the class.

164. This is an action brought under 42 U.S.C. § 1983 to recover damages against defendant for violation of plaintiff's *federal constitutional right* free speech, freedom of association and to petition for redress of grievances, guaranteed by the First and Fourteenth Amendments to the United States Constitution.

165. The jurisdiction of this Court on this cause of action is predicated on 28 U.S.C. §§ 1331 and 1343.

**FIRST AMENDED CLASS ACTION COMPLAINT**
Urenia v Public Storage  CV 13-01934 DDP (AJWx)

166.   Plaintiffs, Victoria Urenia, Soledad Corona, Cathelene Hughes, Javier Hernandez and Brenda Hernandez, are, and at all times mentioned in this complaint were, a citizen of the United States, and a resident of Los Angeles County, California.

167.   Ms. Corona, Ms. Hughes and Mr. Hernandez were members of OFF.

168.   Each home was used as a staging area to protest foreclosures caused by financial institutions and Wall Street.

169.   A substantial part of the events giving rise to this action occurred in Los Angeles County, California. Venue is therefore proper under 28 U.S.C. § 1391(b).

170.   Plaintiffs are informed and believe and allege thereon that Defendants violated plaintiffs' constitutional rights under the First Amendment of the US Constitution and under the California Constitution from December 2012 through the present by (1) having the LAPD and Bank of America monitor social media, cell phones, and fusion center data, and then arrive at each home or protest location and take photos of the members at the OFF events which plaintiffs are informed and believe and allege thereon were then passed onto Bank of America and/or their agents; (2) LAPD would also demand identification of all individuals present at the lock outs or protests0; (3) LAPD would pass this information onto Bank of America;  (4) Bank of America would then take that information and plan immediate lockouts in order to snuff out the protests.

171.   The OFF members who showed up to support other members and were asserting the First Amendment Rights to Freedom of Speech, Freedom of Association and/or Freedom of the Press as a citizen journalist, were suddenly finding themselves a victim of identity theft, a court process, or eviction.

172.   The lockouts of Mr. Hernandez, Ms. Hughes, and Ms. Corona, all OFF members who publicly supported each other with presence, protest signs and support were locked out within a very short time frame of each other.

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

173.   The LAPD would intimidate and harass the OFF members by shouting out commands that no one was allowed to photograph or videotape what was happening at the protests, the lockouts or at Public Storage.  The Bank representative attorneys, Mike Anz and locksmiths also said that they could not take photos or record any conversations.  At Public Storage, the LAPD officers forced Ms. Corona to go inside the Public Storage general office to speak where Public Storage could record the conversation along with the LAPD but Soledad Corona and OFF citizen journalists were not allowed to record, photograph or tape the conversation.

174.   After the members are locked out; they find themselves homeless and without any personal belongings, they are forced to withdraw from attending any Bank protests in the immediate future because they then have to focus on finding food, clothing and shelter.

175.   As such, the Bank accomplishes its goals of suppressing and oppressing the First Amendment Rights of the plaintiffs through the use of the intimidation and force of the LAPD.

176.   Additionally, when Ms. Corona planned a candle light vigil at her residence through OFF, the bank asked the court to shorten the time she had to pack her things due to the candle light vigil. A candle light vigil is a form of speech protected by the First Amendment.

177.   No one told the bank about the candle light vigil which was being set up while the parties were in court.  As such, plaintiff is informed and believes and alleges thereon that the bank was monitoring social media during the hearing.

178.   Then when the plaintiffs arrived at the home after the hearing which was a 5 minute drive, the LAPD was already there and Mike Anz was already loading property onto Bank of America's truck.

**22**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

179.   The LAPD refused to listen to Ms. Corona or her attorney as to what transpired in court, except for the Bank's mandate that packing up the property had to cease prior to the candle light vigil.  However, someone got onto social media and tweeted that the candle light vigil was cancelled while Ms. Corona and her counsel were trying to pack their belongings that had been ransacked.

180.   As such, the candle light vigil was used to limit the amount of time Ms. Corona and Ms. Urenia had to save some of their property and it was cancelled.

181.   Plaintiff is informed and believes and alleges thereon that the candle light vigil was cancelled by someone working for the bank.

182.   The LAPD took the signs, posters and tents from both Ms. Corona's home and Mr. Hernandez's home that were placed there in protest and symbols of Free Speech and destroyed them. The signs were protests against the Banks, not police brutality, so Plaintiffs are informed and believe and allege thereon that the LAPD did this to assist the Bank.

183.   Plaintiff is informed and believes and alleges thereon that the LAPD officers went to the Property to demand identification of present OFF members at the direction of or in coordination with Bank of America, Mike Anz and Public Storage. As such the defendant City of Los Angeles has so far insinuated itself into a position of interdependence with Bank of America and Mike Anz and Public Storage that it must be recognized as a joint participant in the challenged activity.

184.   Public Storage and the LAPD said that the property was Mike Anz's property now.

185.   In acting as alleged in this complaint, defendant violated plaintiff's right to free speech, freedom of association and to petition for redress of grievances, guaranteed by the First and Fourteenth Amendments to the United States Constitution.

23

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

186.   As a direct and proximate result of defendant's actions, described in this complaint, plaintiff has suffered injury, loss, *and/or* damage.  Specifically, Plaintiffs and the Class members have been injured in their business and property in a variety of ways, including the following: all foreclosed upon homeowners and other occupants described in this action were suppressed from asserting their right to Freedom of Association and feared attending certain protests, occupations, or actions; they lost their personal property taken from them (seized) and shelter; they were followed; they were put in an economic situation which forced them to stop attending protests and other gatherings in support of OFF although they still believed in the message.  The plaintiffs became emotionally distressed, distrustful of others, and were placed in fear which caused family strife and discord, emotional distress, insomnia, headaches, stomach ailments, paranoia, reclusiveness, shame, ridicule and depression.

187.   In acting as is alleged in this complaint, defendant acted knowingly, willfully, and maliciously, and with reckless and callous disregard for plaintiff's federally protected rights.

188.   The aforementioned conduct of defendant(s) was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant(s) with the intention on the part of the defendant(s) of thereby depriving plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages.

## SECOND CAUSE OF ACTION
## CIVIL RIGHTS VIOLATION
### (Against All Defendants)

189.   Plaintiff incorporates paragraphs 1 through 188 as though fully set forth herein.

190.   Plaintiff brings this claim as an individual and on behalf of the Class.

**24**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

191.     This is an action brought under 42 U.S.C. § 1983 to obtain injunctive relief and recover damages against defendants for violation of plaintiff's right to be free of unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

192.     The jurisdiction of this Court is predicated on 28 U.S.C. §§ 1331 and 1343.

193.     The LAPD and/or the Bank was already on the scene at Ms. Hughes home and at Ms. Corona's home when their property was taken as described above in the fact section of the complaint.

194.     Plaintiffs are informed and believe and allege thereon that the LAPD and Bank surveyed the plaintiff's location and intentionally planned their arrival after Ms. Corona and Ms. Hughes left the property.

195.     On December 27, 2012 at 3:00AM or 4:00AM before dawn, Defendant City of Los Angeles via the LAPD and Bank of America went to Javier Hernandez and Brenda Hernandez's home without about 50 to 200 officers and forcibly evicted all inhabitants without a valid warrant or probable cause.

196.     Javier Hernandez who was sleeping in the home was not allowed to gather all of his property before being forced to leave by LAPD in riot gear holding assault rifles.

197.     Brenda Hernandez who was not sleeping in their home that night, was blocked off from going into the home to retrieve any of her personal property or belongings.

198.     Plaintiffs are informed and believe and alleged thereon that the raid was performed in order for Bank of America to sell the property to an investor and give them possession in January 2013.

25

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

199.      Instead of giving plaintiffs and the other occupiers time to get the belongings or retrieve them later, a clean-up crew came in and took and destroyed things that were in the home.

200.      The belongings that remained were sent to US Public Storage where Javier Hernandez was forced to sign a lease in order to get access to the belongings.

201.      When he obtained access he discovered most of the property was lost, stolen, damaged or destroyed.

202.      The on or about January 18, 2013 Los Angeles police officer Gonzalez arrived at 2200 Daly Street (the Corona home) along with other officers and forced plaintiff Victoria Urenia from the premises of 2200 Daly Street, Los Angeles, California without any notice to plaintiff.

203.      LAPD officer Gonzalez then allowed Bank of America's agent, a locksmith, to change the locks on the home and erect a 15 to 20 feet chicken-wire fence around the home.

204.      Ms. Urenia called her aunt who was close by and she rushed to the scene.

205.      When she arrived, LAPD officer Gonzalez threatened Victoria Urenia's aunt that if Soledad Corona were to return to her home while they were still there on January 111888, 2013 they were going to arrest her as they had a warrant for her arrest.

206.      In fact, there was no arrest warrant and there was no record of a complaint for trespass.

207.      A few days later on or about January 20 or 21, 2013 Ms. Hughes came home from shopping to find the LAPD at her home with the Bank and locksmith changing the locks on her home.

**26**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

208.    Defendants did not have a valid arrest warrant or trespass complaint when committing the acts they committed on or about January 20, 2013 at Ms. Hughes home.

209.    Ms. Hughes called the Elder Abuse hotline and a social worker arrived on the scene but she was powerless as well.

210.    Ms. Hughes and her family members lost their personal property because they were not allowed to retrieve it and like the Hernandez family, precious items were stolen and missing.

211.    Ms. Hughes finding she was suddenly homeless and without her possessions, suffered a stroke due to the stress and she was hospitalized for a week.

212.    Because she was an elderly person on a fixed income she has been permanently displaced from her former socioeconomic status and remains homeless.

213.    As with Ms. Hughes and Mr. Hernandez's lockout, the Defendants did not have a valid arrest warrant or trespass complaint when committing the acts they committed on January 18, 2013 against Ms. Urenia and Ms. Corona.

214.    On or about January 22, 2013 as the court warned the bank not to remove plaintiffs' belongings from 2200 Daly Street, Los Angeles, California (the Corona residence), the bank's representatives including Mike Anz was already at 2200 Daly Street, Los Angeles, California and had searched and seized plaintiffs' personal property, including but not limited to important documents, identification such as social security cards, medication, keys, and unknown other items as the defendants continue to hold Ms. Urenia and Ms. Soledad's personal property without allowing them to retrieve their belongings without releasing all of their rights or even inventorying the items to determine what else is missing.

27

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

215.     So when plaintiff and her counsel arrived at the property which was only five minutes from the court house the entire house was ransacked with open cupboards and contents of drawers thrown all around.

216.     A truck was already half filled with boxes and furniture and a neighbor thought he had already seen one full truck of plaintiff's personal property leave the premises.

217.     Defendant Bank of America demanded that plaintiffs could only pack as much as they and their attorney could pack in approximately one hour because they could not hold a candle light vigil that was scheduled for that evening and remove items from the home.

218.     So, the LAPD forced plaintiffs and their attorney from the home at approximately 5:00PM with belongings still in the home because OFF may be holding a candle light vigil.

219.     This was in violation of plaintiffs' rights.

220.     Then on or about February 8, 2013 the same state court specifically found that as a limited jurisdiction court, it could not rule on the Los Angeles Police Department's actions or the plaintiffs personal property and that there were other adequate remedies at law in another venue.

221.     Plaintiff received a call from a neighbor on Friday morning, February 22, 2013 (while the defendants knew plaintiff's counsel was in court trial on another matter) informing them that moving trucks had come to her home at 2200 Daly Street, Los Angeles, California and there were movers there moving her personal property out of the home.

222.     Plaintiff Soledad Corona raced to the house on Friday, February 22, 2013 and pleaded for her personal property but the police would not allow her to take her things and stopped her from entering the house.

**28**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

223.    When she pleaded with Mike Anz and his employees or agents that were representing Bank of America for her personal property they refused.

224.    They did not properly pack the personal property and haphazardly put delicate items such as glass vases next to large helium tanks without strapping or padding the items.  The boxes were left open and perishables from the refrigerator and freezer were thrown in the boxes along with other items on the truck.

225.    They would not tell plaintiff where they were taking her personal property.

226.    There was no court order allowing the defendants to remove her belongings yet the police interceded to make sure that the defendants could search and seize the belongings.

227.    From that point after, plaintiffs have, through their attorney requested the return of their personal property on numerous occasions on the following dates: 2/8/13, 2/11/13, 2/14/13, 2/16/13, 2/17/13, 2/20/13, 2/22/13, 2/26/13, 2/28/13, 3/2/13, 3/15/13, 3/16/13, 3/17/13.

228.    On Friday March 16, 2013 at 4:38PM counsel for Mike Anz and Bank of America sent the plaintiff's counsel an email representing they would release the property to the plaintiffs on Saturday March 17, 2013 but they needed a time.

229.    But when plaintiffs arrived with counsel on March 17, 2013 to the disclosed location which was Public Storage located at 4002 Mission Road, Los Angeles, California, Public Storage presented plaintiff with an undisclosed 7 page lease agreement that would have required plaintiff to make representations that were not true and have her waive her rights for redress.

230.    Mike Anz refused to sign and Public Storage refused to accept the document with disclaimers noting the same.

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

231.     Mike Anz, Bank of America, and Public Storage refused to allow plaintiff to see her personal property on March 17, 2013 that they represented was on the site being stored there.

232.     Mike Anz, Bank of America and Public Storage refused to allow plaintiff to simply remove her personal property that defendants took from the site without first signing the release and the lease rental agreement without any alterations to the boiler plate and adhesive contract.

233.     Public Storage then called the Los Angeles Police Department and Officer Gonzalez was first on the scene followed by Officer Chacon and Officer Taylor.

234.     The officers refused to allow the plaintiff tape or record the conversations and events taking place; they refused to take a police report that plaintiffs personal property was taken there without a court order; they refused to demand a court order from the other defendants; and they refused the public including plaintiffs' co-counsel access to the office inside where they were most likely taping the entire event.

235.     Defendants known as Officer Gonzalez, Chacon and Taylor were, at all times mentioned in this complaint, an agent of the City of Los Angeles, employed as Los Angeles Police officers.

236.     Defendants were, at all times mentioned in this complaint, acting in the course and scope of their employment with the Los Angeles Police Department.

237.     Defendants were, at all times mentioned in this complaint, acting under color of state law.

238.     Defendants are sued in their individual capacity.

239.     As described above, at about 11:30AM, on January 18, 2013, defendants wrongfully and unlawfully (a) entered plaintiff's residence; (b) displayed police badges and identification cards; (c) stated that they were police officers; (d)

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

threatened to arrest all persons present in the house and to place Soledad Corona under arrest if she returned to the home where her daughter Victoria Urenia was presently; (e) then intimidated Soledad Corona's daughter into leaving the house so that Bank of America and the LAPD could search through their personal property; (f) ordered and forced plaintiff to leave the residence; (g) searched through the rooms of the residence; (h) damaged various fixtures and furnishings in the process of the search; (i) then changed the locks and came back on January 22, 2013 and seized and carried from the premises important documents, legal identification cards, keys, medications and other unknown items; and then again on February 22, 2013 allowed Bank of America to obtain the rest of the personal property located there that was owned by plaintiff; and (j) damaged the property, still not inventoried or extent known as the filing of this complaint and still have not returned the property to plaintiff.

240.    Plaintiffs did not consent to defendants' entry or subsequent conduct, but protested until their protests were overcome by defendants' threats and shows of force. Defendants had no search or arrest warrant, and they did not arrest plaintiff.

241.    When attempting to retrieve their property from Storage, the Storage Unit demanded that the plaintiffs first sign a lease and waive their rights to any property damage valued over $5,000.00 and the type of property that was stored there.  If the plaintiff refused to sign the lease, like the case of Ms. Urenia and Ms. Corona, Public Storage called the LAPD who then forced the plaintiffs to either sign the lease or leave the Public Storage facility.  The LAPD refused to write up a report that property taken from the homes may have been stolen and they refused to allow the plaintiffs to even look at the property.  The LAPD were acting at the direction of or in coordination with Public Storage.

**FIRST AMENDED CLASS ACTION COMPLAINT**
Urenia v Public Storage  CV 13-01934 DDP (AJWx)

242.    In acting as alleged in this complaint, Defendants City of Los Angeles, Gonzalez, Rubio, Bank of America, Mike Anz and Doe defendants violated plaintiff's right to be free of unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

243.    As a direct and indirect result of the defendants' action plaintiffs lost personal property.

244.    Each of the named plaintiffs also had their personal identification taken during the lock-out process.  Each of the named plaintiffs suffered extreme anxiety and emotional distress while being confronted with the LAPD and blocked from obtaining their property at the request of the bank.  Plaintiff Ms. Hughes suffered a stroke and had to be hospitalized which caused pain and suffering. Plaintiff Ms. Hughes also has suffered permanent socioeconomic displacement from her former socioeconomic status.

245.    As a direct and proximate result of defendants' actions, described in this complaint, plaintiff has suffered injury, loss, and damage, including loss of liberty, invasion of privacy, emotional distress, pain, suffering, and loss of use of property, violation of right to privacy and property damage or destruction.

246.    As a result of defendants' conduct, described in this complaint, plaintiff incurred medical expenses in the amount of unknown amount, to be determined at trial

247.    As a result of defendants' conduct, described in this complaint, plaintiff incurred property damage in an amount to be determined according to proof at trial.

248.    In acting as is alleged in this complaint, defendants acted knowingly, willfully, and maliciously, and with reckless and callous disregard for plaintiff's federally protected rights.

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

249.     As a result of defendants' actions, plaintiff has suffered and will continue to suffer extreme hardship and actual and impending irreparable injury, loss, *and/or* damage in that defendants are still holding plaintiff's personal property including keys and important documents, perishables without plaintiff's consent and plaintiff is informed and believes and thereon alleges that defendants' investigation of plaintiff is continuing, and that defendants may conduct another unlawful search and seizure of plaintiff's property at any time.

250.     Plaintiff has no adequate or speedy remedy at law for the conduct of defendants described above. This action for injunctive relief is plaintiff's only means of securing prospective relief, preventing further unlawful searches and seizures of plaintiff's property.

251.     Plaintiffs also seek actual damages for the property converted or destroyed, and general damages that have been proximately caused by Defendants, conduct.

252.     In acting as is alleged in this complaint, defendant acted knowingly, willfully, and maliciously, and with reckless and callous disregard for plaintiff's federally protected rights.

253.     The aforementioned conduct of defendant(s) was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant(s) with the intention on the part of the defendant(s) of thereby depriving plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages.

### THIRD CAUSE OF ACTION

### RICO

33

### FIRST AMENDED CLASS ACTION COMPLAINT

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

**(Against All Defendants)**

254.    Plaintiffs incorporate in this cause of action all of the allegations in paragraphs 1 through 253 as though set forth in full herein.

255.   Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

**CONSPIRACY**

256.    Defendants have not undertaken the practices and activities described in this complaint in isolation.

257.    Defendants have done so as part of a common scheme and conspiracy, which includes not only the Defendants but other real estate agents and financial institutions, as well.

258.    All of the practices described herein are the competent part of Defendants' larger scheme designed to maximize Defendants' profits, both from the rental itself and from the secondary market for real estate investment trusts.

259.    Each Defendant and all members of the conspiracy, with knowledge and intent agreed to the overall objective of the conspiracy, agreed to commit acts of fraud to wrongfully obtain property and/or money from Plaintiffs and member of the Class, and actually committed such acts.

260.    Indeed, for the fraudulent scheme described above to be successful, each Defendant and other members of the conspiracy had to agree to enact and utilize the same devices and fraudulent tactics against Plaintiffs and members of the Class.

261.    Numerous common facts and similar activities, which reflect the above reality and imply the existence of a conspiracy, exist among all of the Defendants and other members of the conspiracy, including: (a) statements made to borrower

34
**FIRST AMENDED CLASS ACTION COMPLAINT**
Urenia v Public Storage  CV 13-01934 DDP (AJWx)

by the Los Angeles Police Department that if the owner came back to the property to obtain their belongings they would be arrested from a warrant they had obtained in order to allow the bank to take custody of foreclosed homeowners personal property without due process of law; (b) Bank of America's action of refusing to allow the foreclosed homeowner to obtain their personal possessions out of the property, contrary to the homeowner's requests; (c) statements made to borrower by Anz and their counsel and authorized by Bank of America, N.A. that the foreclosed homeowner could obtain their property if they signed a one page release (b) statements made to borrower by District Manager, Summers and others similarly authorized by Public Storage that the foreclosed homeowner must sign the release plus an additional six (6) page lease agreement without alteration or disclaimer in order to create additional expense and/or sell the lease of its storage facilities which was designed to ensure the bank could proceed to transport the foreclosed homeowner's property to Public Storage and hold it there until such time that the homeowner incurred additional expense at the profit of the Defendants.

262.    During the past four years, the conspiracy was conducted through, and implemented by, Defendants and other real estate agents authorized to maintain and resell properties foreclosed by Bank of America.

**RICO ALLEGATIONS**

**The Public Storage Enterprise**

263.    Plaintiffs, incorporates in this cause of action all of the allegations in paragraphs 1 through 151 as though set forth in full herein.

264.    Plaintiff brings this claim on her own behalf and on behalf of each member of the Class described above.

**35**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

265.    Plaintiffs, the Class members and Defendants are all "persons" within the meaning of 18 U.S.C. §1961(3).

266.    Based upon Plaintiffs' current knowledge, the following persons constitute a group of individuals associated in fact that will be referred to herein as the "Public Storage Enterprise:" (1) Public Storage (REIT), including its subsidiaries and related IPOs,  (2) Bank of America, N.A. including its agents, such as Mike Anz. And (3) the Los Angeles Police Department.

267.    The Public Storage Enterprise is an ongoing organization that engages in, and whose activities affect, interstate commerce.

268.    While all Defendants participate in and are members and part of the Public Storage Enterprise, they also have an existence separate and distinct from the enterprise.

269.    In order to successfully steer as many foreclosed upon homeowners as possible into the lease agreements, Defendants need a system that allows them to effectively transfer the property to the facility without interference from the foreclosed upon homeowner.

270.    The Public Storage Enterprise provides defendants with that system and ability, and their control of and participation in it is necessary for the successful operation of their scheme.

271.    Furthermore, the participation by the Los Angeles Police Department allowed the enterprise to function more effectively, given that many of the functions provided by these entities, such as lock outs, would normally be conducted by the Los Angeles Sherriff's Department under color of law.

272.    Los Angeles Police Department's participation in the enterprise allowed the normal checks and balances within the lock out and lien process to be eliminated,

36

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

permitting Defendants to advance their scheme and conceal their fraudulent activity they were engaging in.

273.    The Defendants control and operate the Public Storage Enterprise as follows: (a) Defendants use the Los Angeles Fusion Center to monitor the activities of the bank's targets and then have the Los Angeles Police Department show up at the home in order to allow Bank of America's agent locksmith to change the locks on the property without interference and threatens that they have a warrant for the arrest of the foreclosed upon homeowner if they re-appear at the scene or fail to immediately leave; (b) Bank of America then proceeds to lock up the plaintiff's personal property inside the residence; (c) Bank of America's agent then refuses to coordinate a date or time for plaintiff to remove their personal property from the house and/or they call for an immediate "clean out" crew to arrive at the residence and take the property and belongings and destroy it; (d) Bank of America's agent, (e.g. Mike Anz in the case of Corona and Urenia) then loads the property on trucks and takes it to a Public Storage facility although plaintiff is present and requesting their property; then (e) Bank of America sends the plaintiff a one page Release via Email, Fax and/or US mail (via Email in the case of Ms. Corona and Ms. Urenia) representing that if the plaintiff signs the release they will be able to obtain their property from storage; (f) then when the plaintiff arrives at Public Storage, an additional seven pages are added to the form which is a lease agreement forcing the plaintiff to sign away their rights if their property has been damaged, lost or stolen and forcing them into a lease with Public Storage for rent.

274.    This pattern was repeated in the Hernandez household and the Hughes household within an approximate one month period of time in Los Angeles County.  Plaintiff is informed and believes and alleges thereon that this pattern

37

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

and practice has been employed since the financial crises began in or about 2009 and continues through the present as more particularly alleged in the fact section above which is incorporated herein.

275.    Prior to each lock out, the plaintiffs were involved in OFF protests, meetings and events where the LAPD was present taking pictures.  In the case of Corona and Hughes, both were gone when the LAPD initially appeared, and based on that pattern, plaintiffs allege and believe the LAPD and Bank of America were using the Fusion Center and surveillance equipment to track the plaintiffs for their own purposes and not for the legitimate purpose that the Fusion Center and surveillance equipment was set up for.

276.    During each step, the Los Angeles Police Department appears on the scene to intimidate the homeowner and stifle any First Amendment rights, and violates the person's Fourth Amendment rights and Fourteenth Amendment rights, but none of the appearances show up in Police records.

277.    The Public Storage Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendants engage.

**Alternative Pleading of Enterprise**

278.    Alternatively, the Bank of America Enterprise is an ongoing organization that engages in, and whose activities affect interstate commerce.

279.    While all Defendants participate in and are members and part of the Bank of America Enterprise, they also have an existence separate and distinct from the enterprise.

280.    In order to successfully steer as many foreclosed homeowners into storage rental leases with Public Storage, Defendants need a system that allows them to effectively transfer the property from the homeowner to Public Storage.  The Bank of America Enterprise provides Defendants with that system and ability,

38

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

and their control of and participation in it, as necessary for the successful operation of their scheme.  Furthermore, the participation by the co-defendants allowed the enterprise to function more effectively, given that many of the functions provided by these entities, such as appraisals, would normally be conducted by independent entities.  The Los Angeles Police Department's participation in the enterprise allowed the normal checks and balances within the lock out and lien process to be eliminated, permitting Defendants to advance their scheme and conceal the fraudulent activity they were engaging in.

281.    The Defendants control and operate the Public Storage Enterprise as follows: (a) Defendants determine if the homeowner that was foreclosed upon has been exerting their First Amendment rights to free speech and association; (b) Defendants then reward and incentivize the Los Angeles Police Department, the agent (e.g. Mike Anz) and pay defendants to search the homeowner's personal property, then seize it and transfer it to a Public Storage facility and hold it there until the foreclosed upon homeowner signs a lease agreement which states that the property contained in the storage is not of sentimental value, does not contain any valuables and does not exceed a value of $5,000.00.  It limits any lawsuit to small claims court and releases any liability. It also beholds the foreclosed upon homeowner to pay monthly storage fees and costs.

282.    The Bank of America Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendants engage in.

**PREDICATE ACTS**

283.    Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. §1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud).  As set forth herein, Defendants have engaged, and

**FIRST AMENDED CLASS ACTION COMPLAINT**
Urenia v Public Storage  CV 13-01934 DDP (AJWx)

continue to engage in conduct violating each of these laws to effectuate their scheme.

284.     Additionally, in order to make their scheme effective, each of the Defendants sought to and did aid and abet others in violating the above laws within the meaning of 18 U.S.C. §2.  As a result, their conduct is indictable under 18 U.S.C. §1341 and 18 U.S.C. §1343, on this additional basis.

**VIOLATIONS OF 18 U.S.C. §1341 and 18 U.S.C. §1343**

285.     "There are two elements in mail fraud: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." *Schmuck v. United States*, 489 U.S. 705, 721 n. 10 (1989); *see also Pereira v. United States*, 347 U.S. 1, 8 (1954) ("The elements of the offense of mail fraud under . . . § 1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme."); Laura A. Eilers & Harvey B. Silikovitz, *Mail and Wire Fraud*, 31 Am. Crim. L. Rev. 703, 704 (1994) (cases cited).

286.     For the purposes of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false promises, representations or promises, the Defendants, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories matter and findings to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carriers, and received matter and things from the Postal Service or commercial interstate carriers, including but not limited to leases; releases; promotional materials, applications, agreements, manuals, and correspondence.

**40**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

287.     For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, the Defendants, in violation of 18 U.S.C. § 1343, transmitted and received by wire, matter and things, including but not limited to leases, promotional materials, applications, agreements, manuals and correspondence, and made or caused to be made false statements over the telephone, electronic mail, and internet.

288.     The matter and things sent by Defendant, through their authorized agent, via the Postal Service, commercial carrier, wire or other interstate electronic media included, inter alia, lease agreements, applications, correspondence, and other materials related to the foreclosure, lock out and lease.

289.     Other matter and things sent through or received via the Postal Service, commercial carrier, wire, or other interstate electronic media by Defendants included information or communication in furtherance of or necessary to effectuate the scheme.

290.     Defendants' misrepresentations, acts of concealment and failures to disclose were knowing and intentional, and made for the purpose of deceiving Plaintiffs and the members of the Class and obtaining their property for Defendants' gain.

291.     Defendants either knew or recklessly disregarded the fact that the misrepresentation and omission described above were material, and Plaintiffs and the Class relied upon the misrepresentations and omissions as set forth above.

292.     As a result, Defendants have obtained money and property belonging to the Plaintiffs and Class members, and Plaintiffs and the Class has been injured in their business or property by the Defendants' overt acts of mail and wire fraud, and by their aiding and abetting each other's acts of mail and wire fraud.

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage   CV 13-01934 DDP (AJWx)

**PATTERN OF RACKETEERING ACTIVITY**

293.    The Defendants have engaged in a "pattern of racketeering activity," as defined by U.S.C. §1961(5), by committing or aiding and abetting in the commission of at least two acts of racketeering activity, i.e., indictable violations of 18 U.S.C. §§ 1341 and 1343 as described above, within the past four years.  In fact, each of the Defendants has committed or aided and abetted in the commission of multiple acts of racketeering activity.  Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted similar victims, including Plaintiffs and Class members.

294.    The multiple acts of racketeering activity that Defendants committed and/or conspired to commit, or aided and abetted in the commission of, were related to each other, and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. §1961(5).

**RICO VIOLATIONS**

295.    Section 1962(c) of RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…"

296.    Through the patterns of racketeering activities outlined above, the Defendants have also conducted and participated in the affairs of the Public Storage Enterprise, or in the alternative, the Bank of America Enterprise.

297.    Section 1962(d) of RICO makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b) or (c), of this section.

42

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

298.     Defendants' conspiracy to secure property and/or money from Plaintiffs and Class members for their own use through the fraudulent scheme described above violates 18 U.S.C. §1962(d).

299.     Each of the Defendants agreed to participate, directly or indirectly, in the conduct of the affairs of the Countrywide Broker Enterprise, or in the alternative, the Bank of America Enterprise, through a pattern of racketeering activity comprised of numerous acts of mail fraud and wire fraud, and each Defendant so participated in violation of 18 U.S.C. §1962(c).

300.     Defendant Public Storage, Mike Anz, and Bank of America used a scheme to defraud by means of false pretenses, in that they used the Public Storage Lease Agreement to limit Bank of America and Mike Anz's liability for any stolen, lost, destroyed or damaged property (2) defendants knowingly and willfully participated in scheme with intent to defraud, by refusing to turn over the property without a signature on the lease agreement with all terms unaltered; and (3) Defendants emailed, faxed and/or used the US Mail (aka used interstate wire or US post office communications) to send out the lease agreement to the plaintiffs in furtherance of scheme.

301.     Defendant's actions entitle plaintiff to actual damages, treble damages, attorney's fees and costs.

**COUNT 1**

**VIOLATION OF RICO 18 U.S.C. §1962(c)**

302.     Plaintiffs, incorporates in this cause of action all of the allegations in paragraphs 1 through 297 as though set forth in full herein.

303.   Plaintiff brings this claim on her own behalf and on behalf of each member of the Class described above.

304.     This claim for relief arises under 18 U.S.C. §1964(c).

**43**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

305.    As set forth above, Defendants have violated 18 U.S.C. §1962(c) by conducting, or participating directly or indirectly in the conduct of, the affairs of the Public Storage Enterprise, or in the alternative, the Bank of America Enterprise through a pattern of racketeering.

306.    As a direct and proximate result, Plaintiffs and Class members have been injured in their business or property by the predicate acts which make up the Defendants' patterns of racketeering activity.

307.    Specifically, Plaintiffs and the Class members have been injured in their business and property in a variety of ways, including the following: all foreclosed upon homeowners and other occupants described in this action had their personal property taken from them (seized) and searched through by the defendants without notice and due process as allowed under state law.  These foreclosed upon homeowners were then forced to sign lease and release agreements that were adhesive and unconscionable, some only to find their property had been destroyed or stolen.  In some instances, the foreclosed upon homeowner was forced to pay additional storage fees to Public Storage and if they failed to do so, their personal property was auctioned off. In other instances, the foreclosed upon homeowner had to hire legal representation to attempt to retrieve their personal property.  Perishables such as food items, necessary medicines, personal hygiene items and clothes of the occupants were taken and thrown out or transported to storage, causing additional expense incurred for food, medicine, personal hygiene items and clothing. As such, the Plaintiffs and Class members incurred additional expense, which they would not otherwise have had to pay.

308.    The lease agreements were emailed, mailed through the US Mail or faxed to the homeowner and/or their agent.  The lease agreements contained untrue statements about the type of contents in storage and their value.  It unfairly

44

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

limited liability to a nominal amount such as $5,000.00 and was being used as an extortionate measure to release liability in exchange of the homeowner to get their belongings.

309.    Defendant's actions entitle plaintiff to actual damages, treble damages, attorney's fees and costs.

**COUNT II**

**VIOLATION OF RICO 18 U.S.C. §1962(D)**

**CONSPIRING TO VIOLATE 17 U.S.C. §1962 (C)**

310.    Plaintiffs, incorporates in this cause of action all of the allegations in paragraphs 1 through 306 as though set forth in full herein.

311.    Plaintiff brings this claim on her own behalf and on behalf of each member of the Class described above.

312.    This claim for relief arises under 18 U.S.C. §1964(c).

313.    As set forth above, in violation of 18 U.S.C. §1962(d), Defendants have, as set forth above, conspired to violate 18 U.S.C. §1962(c) by conducting, or participating directly or indirectly in the conduct of, the affairs of the Public Storage Enterprise, or in the alternative, the Bank of America Enterprise through a pattern of racketeering.

314.    As a direct and proximate result, Plaintiffs and Class members have been injured in their business or property by the predicate acts which make up the Defendants' patterns of racketeering activity.

315.    Specifically, Plaintiffs and the Class members have been injured in their business and property in a variety of ways, including the following: all foreclosed upon homeowners and other occupants described in this action had their personal property taken from them (seized) and searched through by the defendants without notice and due process as allowed under state law.  These foreclosed

upon homeowners were then forced to sign lease and release agreements that were adhesive and unconscionable, some only to find their property had been destroyed or stolen.  In some instances, the foreclosed upon homeowner was forced to pay additional storage fees to Public Storage and if they failed to do so, their personal property was auctioned off. In other instances, the foreclosed upon homeowner had to hire legal representation to attempt to retrieve their personal property.  Perishables such as food items, necessary medicines, personal hygiene items and clothes of the occupants were taken and thrown out or transported to storage, causing additional expense incurred for food, medicine, personal hygiene items and clothing. As such, the Plaintiffs and Class members incurred additional expense, which they would not otherwise have had to pay.

316.    The lease agreements were emailed, mailed through the US Mail or faxed to the homeowner and/or their agent.  The lease agreements contained untrue statements about the type of contents in storage and their value.  It unfairly limited liability to a nominal amount such as $5,000.00 and was being used as an extortionate measure to release liability in exchange of the homeowner to get their belongings.

317.    Defendant's actions entitle plaintiff to actual damages, treble damages, attorney's fees and costs.

## FOURTH CAUSE OF ACTION

### Violation of 15 USC §§ 2, 51 (Monopolization)

### (Against Public Storage (REIT), Public Storage, Anz, and Bank of America)

318.    Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 207 of this Complaint as though set forth in full herein.

319.    Plaintiff brings this claim on behalf of herself and members of the Class.

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

320.     Section 2 of the Sherman Act provides that "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several  States… shall be deemed guilty" of an offense against the antitrust laws of the United States. 15 U.S.C. §2.

321.     At all times material to this Complaint, Defendants collectively have maintained, attempted to achieve and maintain, or combined or conspired to achieve and maintain, a monopoly over the self-storage market.  Moreover, Defendants have used, attempted to use, or combined and conspired to use, their monopoly power to reduce competition and harm consumers for their own profit in those relevant markets in the United States in violation of 15 U.S.C. §2.

322.     Defendants have **not** maintained their monopoly and/or market power in the relevant markets as a result of superior products or services, business acumen, or historical accident.  Defendants specifically have intended, and continue to intend, through their exclusionary conduct, to willfully maintain their monopoly and/or market power, control prices, exclude competitors, harm consumers, and destroy competition in the relevant markets.  Through the activities alleged above, among others, Defendants have gained, maintained, extended, and attempted to gain monopoly power in violation of Section 2 of the Sherman Act.

323.     Defendant Public Storage acquired Shugard using loans from KeyBank (now US Bank) and other financial institutions then Public Storage converted from a corporate form into a sophisticated security called a REIT in 2007 on the eve of financial collapse that would result in 972,500 California residential homes being foreclosed upon.

324.     Through the use of this financial sophistication Public Storage became the largest public storage facility in the world and the Second largest REIT.

**47**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

325.    Bank of America grew its assets from $1 trillion to $200 trillion in the same time period.

326.    After the financial crises started, Defendant Public Storage instituted a teaser rate of the First Month "free" or for "$1.00" or for "1 cent."

327.    By instituting this rate, the bank does not have to pay for the storage rental and gives incentive for the bank to haul plaintiff's property that the bank or Mike Anz does not want to storage instead of to the trash.

328.    The plaintiffs then have to make up for the first month free teaser rate by paying for a lease where that teaser rate is then absorbed by the higher rate being charged to the new "tenant" aka the plaintiff.  Alternatively, the "tenant" as a foreclosed homeowner who had their property involuntarily hauled off to Public Storage is forbidden from obtaining their property in the first month at the first month teaser rate.

329.    Furthermore, since the plaintiffs are forced to sign a lease of multiple months they have been tied into using Public Storage rather than using another storage facility that may be closer to their residence (more convenient), lower cost, or have more appropriate storage facilities for their property.

330.    For example, Ms. Corona was already a tenant at anther Public Storage facility before her property was hauled away.  Her property did not get directed to her storage facility but to a storage facility that was farther away.

331.    It would have cost her more money to pay for transportation to haul her items to her pre-existing storage facility than to sign a 6 month lease.

332.    Mr. Hernandez lost some of their belongings because they could no longer afford the storage fees and could not afford to move what was now damaged property.

**48**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

333.    What appears to be an ordinary charge of storage rental becomes insurmountable to the person who has been dumped in the street without any personal property or shelter because life is more expensive when one has to live out of a hotel and buy everything again.

334.    If the displaced and foreclosed homeowner cannot pay the storage, then Public Storage gets to sell the contents of the storage units and keep the profits which is lucrative on the grounds many things contained in those units surely exceed the few hundred dollars they charge and also exceed the insurable amount of $5,000.00.

335.    Unlike a smaller unit, Public Storage is the second largest REIT in the world and has the market power along with the financial institution to coordinate with the LAPD as alleged above.

336.    Due to Public Storage's size they can offer the bank this rate of $1 or 1 cent to incentivize the bank to use Public Storage for their foreclosures.

337.    Public Storage is a Wall Street instrument.  Because Public Storage is a REIT as of 2007, and not a corporate structure, it is more like a financial institution because it is comprised of many financial institutions within the REIT itself.

338.    Plaintiff is informed and believes and alleges thereon that Public Storage willfully acquired and maintained monopoly power by coordinating with the financial institutions in 2007 just prior to the economic collapse, knowing that the demand for storage would be increased due to foreclosures.  This was a cunning way for the financial industry to integrate vertically and horizontally to maximize its future profits on foreclosures.

339.    The financial sector grew from 17% of GDP to 47% GDP during this same time period.

**49**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

340.    In particular Bank of America Corp.'s (the parent holding company of Bank of America, N.A.) total assets grew from $1,600,000,000,000.00 ($1.6 Trillion dollars) on December 31, 2007 to $200,000,000,000,000.00 ($200 Trillion dollars) as of December 31, 2013.

341.    As a direct and proximate result of this conduct of swallowing market share not only within their own markets but taking a larger portion of the pie of the economy as a whole, the plaintiffs have not been given any economic choice, prices are not tied to competition, and their rights and voice have been oppressed.

342.    The entire process of competition has been eliminated and consumer welfare has been injured.

343.    Defendants have no legitimate business justification for their exclusionary, anticompetitive conduct.

344.    As a direct and proximate result of the aforesaid monopolization and/or attempted monopolization, and the actions taken pursuant thereto, Plaintiff has been injured in its business and property as follows:  (a) Plaintiff has been unable to obtain possession of her personal property; (b) Plaintiff has been precluded from using her personal property, including perishables that have been destroyed, and has incurred additional expense that otherwise would have been avoided; (c) Plaintiff has incurred expense in having to seek legal redress in order to regain possession of her personal property; and (d) Plaintiff has otherwise been injured in her business and property.

345.    Plaintiffs do not know the full extent of their damages, but believes that damages have been substantial.

346.    As a result of these federal antitrust violations, Plaintiff is entitled to recover her actual damages in amount, unknown, multiplied by three, and the cost of suit, including reasonable attorney's fees.

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

## FIFTH CAUSE OF ACTION
### Violation of 15 USC §§ 2, 26 (Monopolization)
### (Against Public Storage (REIT), Public Storage, Anz, and Bank of America)

347.    Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 346 of this Complaint as though set forth in full herein.

348.    Plaintiff brings this claim on behalf of herself and members of the Class.

349.    Unless enjoined from doing so, Defendants will continue to violate Section 2 of the Sherman Act.

350.    Plaintiff also is entitled to recover its costs of suit, including a reasonable attorney's fee.

Wherefore plaintiff demands judgment against defendants as set forth below.


## SIXTH CAUSE OF ACTION
### UCL §17200 VIOLATION
### (Against Bank of America, N.A, Mike Anz and Public Storage)

351.    Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 350 as though set forth in full herein.

352.   Plaintiff brings this claim on her own behalf and on behalf of each member of the Class described above.

353.    Business & Professions Code §17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business & Professions Code" and reaches past and one-time acts. *Id. See also*, *Stop Youth Addiction, Inc. v Lucky Stores, Inc.*, 17 Cal4th 553, 570 (1998).

354.    Bank of America and Public Storage from 2009 forward continue to deceive and mislead the general public by announcing they have court orders allowing the

Los Angeles Police Department to evict homeowners and search and seize their personal property, when there is no valid search warrant and no arrest was made.

355.     Such actions violate state law and as such, are an unlawful business practice, as particularly described above and incorporated herein.

356.     Bank of America and LAPD's acts and practices of threatening to arrest and taking property without due process as a bargaining tool in order to coerce those to stop associating with the OFF movement to chill free speech and temper any speaking out, displaying signs, or attending/holding candle light vigils is an unlawful, unfair or fraudulent business practice.

a.     Public Storage and Mike Anz's acts and practice of making foreclosed homeowners sign lease agreements that contain language obligating them to payments, limit of loss and release of all liability exceeding $5,000.00 as more particularly described in that cause of action constitutes an unlawful business act or practice *within* the meaning of Business & Professions Code §17200.

b.     The harm to plaintiff and to members of the general public outweighs the utility of defendant's policy/practice, and consequently, Public Storage, LAPD, Mike Anz and Bank of America's practice constitutes an unfair business act or practice within the meaning of Business & Professions Code §17200.

c.     Bank of America, the LAPD, Mike Anz and Public Storage's policy/practice in this entire scheme for profit as particularly laid out above, that it was evictions and lock-outs is likely to mislead the general public, and did mislead the general public into believing that that if their home was facing a foreclosure sale, eviction, consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code §17200.

**52**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

357.     A plaintiff relied on due process of law and her constitutional rights and as a result, was emotionally distressed to find the lock out and have her property searched and seized.

358.     As a direct and proximate result of Defendant Bank of America, Public Storage and Mike Anz's joint conduct coordinated with the LAPD, plaintiffs were removed from their homes by force or threat of force without a valid warrant (losing a present or future interest in their property rights) while they were fighting with the banks, they lost their personal property and were prohibited from keeping their information such as identification cards, social security numbers and bank records private.

359.     Ms. Hughes incurred the added expense of hospital stays and increased medical costs.

360.     Ms. Corona lost the opportunity to seek relief through the national mortgage settlement agreement channels, HUD, the unlawful detainer court with the pending hearing date, other government provided channels. As a result, she has incurred general and special damages in an amount to be proven at trial.

361.     Moreover, as to the real property which is their shelter, plaintiff and other members of the general public have no other adequate remedy at law in that real property is deemed unique, and the plaintiff and other members of the general public lost their opportunity to take advantage of any alternative to foreclosure, eviction or lock out during the moratorium on the grounds that they were duped by the false advertisement of Bank of America as laid out above.

362.     As a result of the aforementioned acts, plaintiff and Class members have lost money or property and suffered injury in fact.  Bank of America and Mike Anz received and converted the property belonging to the plaintiffs and members

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

of the Class, as well as an undeserved public image of caring about not foreclosing during the holidays.

363.     Second, after the NDAA and US Patriot Act were instituted Fusion Centers were formed in major metropolitan areas for the legitimate purpose of protecting the People from terrorist threats.  Because that included a threat to the financial system of the United States, bank executives were allowed access to the Fusion Centers.

364.     As time rolled by, plaintiff is informed and believed that the financial institutions like Bank of America created a relationship and interdependence with government enforcement agencies like the LAPD.

365.     By 2007 Bank of America had knowledge that the financial products they had been creating and using in the mortgage industry was going to cascade and implode the financial industry which would lead to a foreclosure crises in America.

366.     The foreclosure crises would in turn create lock outs and the demand for storage space.

367.     So in 2007 Public Storage was converted into its own REIT (a security).

368.     By the time this complaint was filed approximately 972,500 California residential homes were foreclosed upon.

369.     Public Storage's financial position soared as occupancy rates increased to over 90%.

370.     Bank of America's financial position soared as it accumulated assets on its books.

371.     "Mike Anz" financial position soared, too.

**54**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

372.    Public Storage was able to float money to acquire more space and then Bank of America used that space to trash out homes at nominal cost base don Public Storage's teaser rate, leveraging money and position for Bank of America.

373.    Public Storage's demand increased as a result of the trash outs.

374.    Public Storage in turn was allowed to slam homeowner's into leases limiting everyone's liability and cutting off any recourse to any damage beyond $5,000.00 or else Public Storage was able to auction off the property.

375.    The LAPD assisted and coordinated the lockouts and forced lease agreements, which also benefited the LAPD because they had a policy of not wanting any personal property of homeless people on their streets.

376.    This resulted in a foreclosed homeowner becoming homeless and without any basic necessities overnight.

377.     Whenever the Bank, Mike Anz, or Public Storage received any resistance from the homeowner they would simply call the LAPD who would then go to the scene and harass and intimidate the homeowner and any OFF Supporters that were there.

378.    The intimidation and harassment was so extreme it included demanded the identity of all OFF members that were participating, demanding that no filming or photos be taken, spying on OFF members, threatening to arrest them if they tried to assert their rights as a citizen journalist, and taking their protest signs, tents and props and destroying them.

379.    This conduct as described above was unfair in that it violated the public policy underlying First, Fourth and Fourteenth Amendment.  The conduct was fraudulent because a reasonable consumer would believe that the rights being espoused by the LAPD were the consumer's true rights and not the rights as written by the bank or public storage facility.

**FIRST AMENDED CLASS ACTION COMPLAINT**
Urenia v Public Storage  CV 13-01934 DDP (AJWx)

380.     Finally, stopping this practice furthers the public interest.   Plaintiffs are therefore entitled to reasonable attorney's fees under section 1021.5 of the California Code of Civil Procedure.

Wherefore plaintiff demands judgment against defendants as set forth below.

### SEVENTH CAUSE OF ACTION
### Aiding and Abetting Violation of §17200
### (Against Does 1 through 10)

381.     Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 380 as though set forth in full herein.

382.   Plaintiff brings this claim on her own behalf and on behalf of each member of the Class described above.

383.     Defendants Doe 1 through 10 working at the Fusion Center in Los Angeles knew and were aware of Bank of America, Public Storage, and LAPD's unlawful, unfair or deceptive business practices and untrue and misleading conduct alleged above by virtue of directing the foreclosures, concluding the foreclosures or becoming the beneficiary of the foreclosures on these properties but continued with the scheme for their own profit.

384.     Defendants Doe 1 through 10 aided and abetted/induced these violations by Bank of America in that they commanded or conducted the foreclosure on these properties during the moratorium period.

### EIGHTH CAUSE OF ACTION
### Set Aside Foreclosure Sale
### (By Plaintiff Soledad Corona Only and Against Bank of America and Does 1 through 10)

385.     Plaintiff incorporates in this cause of action all of the allegations in paragraphs 1 through 384 as though set forth in full herein.

386.     The Deed of Trust contained a HUD provision that did not allow acceleration of the deed of trust for failure to pay on the mortgage.

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

**9. Grounds for Acceleration of Debt.**

**(a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:**

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale without Credit Approval. Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germane Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events

**(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.**

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

387.     In or about December 2008, Ms. Corona noticed that the mail she received on her mortgage changed from Countrywide Home Loan to Bank of America, NA.

388.     On March 2009, she was in a head-on car which caused a temporary loss of income because she was unable to work for several weeks.

389.     She contacted Bank of America, because she did not want to fall behind on payments.

390.     She left many messages with Bank of America, and did not receive any call backs. She continued calling and leaving messages to no avail and she finally spoke to someone who denied a loan modification right off.  Bank of America informed her she need to stop paying her mortgage in order to prequalify for a loan modification.

391.     By mid-May 2009, she fell behind in her mortgage payments so she could prequalify for a loan modification as represented to by Bank of America on the phone.

392.     After sending her completed loan modification application package to Bank of America several times without an accurate or prompt response she hired a loan modification firm in the summer of 2009.

393.     During this process, Bank of America did not inform Ms. Corona of her rights under HUD, and they accelerated her loan and put her in default.

394.     Bank of America did not offer a face to face counseling session.

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

395.     In fact, they ignored her calls and requests and continued to lose her information.

396.     Without putting Ms. Corona though the HUD process, Bank of America had given notice of sale of Ms. Corona's home at foreclosure.

397.     After the sale was listed for December 2009, and just prior to the sale Ms. Corona was told that Bank of America had approved Ms. Corona's loan modification and sent her the loan modification in Mid to late December.

398.     She was assured that the foreclosure sale was postponed due to the moratorium and her loan was modified.

399.     Ms. Corona ran to the bank and obtained a cashier's check and sent in her first payment.

400.     She later learned Bank of America sold her home at foreclosure.

401.     None of this could have happened if Bank of America followed HUD Guidelines.  HUD Guidelines would have prevented the Notice of Default from being recorded in the first place.

402.     For example, HUD Guidelines required that a copy of Ms. Corona's executed Note must be delivered to her. (So did Para 15 of the DOT).

403.     Ms. Corona never received a copy of her executed Note.

404.     HUD Guidelines required Bank of America to hold a counseling session with Ms. Corona to work in good faith with her to give her a repayment plan or all of her options to avoid default before recording a notice of default and proceeding with nonjudicial foreclosure.

405.     Bank of America did not work in good faith with Ms. Corona to give her the options to avoid default; in fact they did the opposite and told her she had to default in order to modify her loan.

**FIRST AMENDED CLASS ACTION COMPLAINT**
Urenia v Public Storage  CV 13-01934 DDP (AJWx)

406.    After they instructed Ms. Corona to default, Bank of America proceeded with nonjudicial foreclosure.

407.    HUD Guidelines required Bank of America to use their own repayment process which was in effect before HAMP.

408.    Although HUD did not require Bank of America to modify the loan, it did require Bank of America to truthfully inform Ms. Corona of all her options available to her.

409.    Bank of America did not use HUD's own guidelines or repayment process on Ms. Corona's loan.

410.    HUD Guidelines required Bank of America to transfer title back to HUD after foreclosure sale.

411.    Bank of America kept offering Ms. Corona loan modification applications to fill out from 2010 through 2012 while concealing the fact that they were not in a position to obtain a loan modification on her behalf.

412.    Ms. Corona was a Hispanic single parent working for a local government body.  She acquired a modest "historical" home in Los Angeles (deemed Historical).  This was exactly the type of homeowner HUD loans were targeted at, and by failing follow HUD Guidelines, Bank of America took her home.

413.    Based on the above allegations, Defendant Bank of America never followed the HUD guidelines outlined in the Deed of Trust, such as providing a counseling session to avoid foreclosure.

414.    Consequently, defendants did not have the authority to invoke the Power of Sale Clause under the Deed of Trust in order to initiate the nonjudicial foreclosure.

415.    The purpose of this HUD provision was to provide low income families with a decent home where HUD would guarantee payments.

416.    California does not have a statute that allows for nonjudicial foreclosure.

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

417.     Nonjudicial foreclosure is limited to the contract.

418.     Since Defendants breached the contract by failing to substantially perform the HUD Guidelines which were a precondition to invoking the Power of Sale clause, the resulting trustee's deed upon sale acquired through the nonjudicial foreclosure process was void.

419.     Second, HUD guaranteed the loan which means Bank of America was made whole by HUD after recording the trustee's deed upon sale.

420.     Consequently, no tender is required as (1) it is satisfied by the HUD guarantee, and/or (2) the sale was void.

421.     The sale should be set aside.

422.     As a proximate result of defendant's conduct, plaintiff lost title to her home, which then set up her to lose her personal property.

423.     She also suffered from emotional distress including but not limited to anxiety, depression, headaches, insomnia, humiliation, shame, paranoia, fear, and general malaise.

424.     Bank of America returned the cashier's check back to her and refused to deposit it and cut a check in Ms. Corona's name.  As such, she could not get the money from the cashier's check.

425.     Plaintiff was injured in an amount to be proven at trial and plaintiff is entitled to costs and attorney's fees.

426.     The aforementioned conduct of defendant(s) was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant(s) with the intention on the part of the defendant(s) of thereby depriving plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected plaintiff to a cruel and unjust hardship in

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages.

Wherefore, plaintiff prays for relief as set forth hereinafter.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs pray for judgment** against defendants, and each of them, as follows:

**First Cause of Action**

1. For a preliminary injunction ordering defendants, and their officers, agents, employees, successors, and attorneys, and all those in active concert or participation with defendants, to refrain from using the Fusion Center and other surveillance techniques in order to assist the banks and lockout persons; (2) to refrain from demanding identification at protests, lockouts, or OFF meetings; (3) to refrain from instructing citizens and journalists to stop filming, taking photos or reporting these events; (4) to stop stalking homeowners; (5) to stop taking and destroying protest signs, tents and other props used as free speech; and to stop targeting members of the public showing support of educating the public about the effects of Wall Street and the financial crisis.

2. For actual damages;

3. For general damages;

4. For a permanent injunction permanently enjoining and restraining defendants, and their officers, agents, employees, successors, and attorneys, and all those in active concert or participation with defendants from similar conduct in the future;

5. Costs;

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

6. Attorney fees:

7. Any further relief the court would deem appropriate and just.

**Second Cause of Action**

1. For a preliminary injunction ordering defendants, and their officers, agents, employees, successors, and attorneys, and all those in active concert or participation with defendants, to return the property of plaintiff that was seized that still exists and to refrain immediately and pending final hearing and resolution of this action from further searches and seizures of plaintiff's property without a search warrant and in the absence of exigent circumstances allowing a search without a search warrant under applicable law.

2. For a permanent injunction permanently enjoining and restraining defendants, and their officers, agents, employees, successors, and attorneys, and all those in active concert or participation with defendants from similar conduct in the future.

3. For actual damages;

4. For general damages;

5. Costs;

6. Attorney fees:

7. Any further relief the court would deem appropriate and just.

**Third Cause of Action**

1. For a preliminary injunction ordering defendants, and their officers, agents, employees, successors, and attorneys, and all those in active concert or participation with defendants, to return the property of plaintiff that was seized that still exists and to refrain immediately and pending final hearing and resolution of this action from further searches and

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

seizures of plaintiff's property without a search warrant and in the absence of exigent circumstances allowing a search without a search warrant under applicable law.

2. For a permanent injunction permanently enjoining and restraining defendants, and their officers, agents, employees, successors, and attorneys, and all those in active concert or participation with defendants from similar conduct in the future.

3. For actual damages;

4. For general damages;

5. Treble Damages;

6. Costs;

7. Attorney fees:

8. Any further relief the court would deem appropriate and just.

**Fourth Cause of Action**

1. For a preliminary injunction restraining defendants, and their officers, agents, employees, successors, and attorneys, and all those in active concert or participation with defendants, from forcing any foreclosed homeowner into signing a release or lease of any nature if their property is brought to Public Storage from a lockout in Los Angeles County, California pending final hearing and resolution of this action from further searches and seizures of plaintiff's property without a search warrant and in the absence of exigent circumstances allowing a search without a search warrant under applicable law.

2. For a permanent injunction permanently enjoining and restraining defendants, and their officers, agents, employees, successors, and

**64**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

attorneys, and all those in active concert or participation with defendants from similar conduct in the future.

3. For actual damages;

4. For general damages;

5. Treble Damages;

6. Costs;

7. Attorney fees:

8. Any further relief the court would deem appropriate and just.

**Fifth Cause of Action**

1. For a preliminary injunction restraining defendants, and their officers, agents, employees, successors, and attorneys, and all those in active concert or participation with defendants, from forcing any foreclosed homeowner into signing a release or lease of any nature if their property is brought to Public Storage from a lockout in Los Angeles County, California pending final hearing and resolution of this action from further searches and seizures of plaintiff's property without a search warrant and in the absence of exigent circumstances allowing a search without a search warrant under applicable law.

2. For a permanent injunction permanently enjoining and restraining defendants, and their officers, agents, employees, successors, and attorneys, and all those in active concert or participation with defendants from similar conduct in the future.

3. For actual damages;

4. For general damages;

5. Treble Damages;

6. Costs;

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

7. Attorney fees:

8. Any further relief the court would deem appropriate and just.

**Sixth and Seventh Cause of Action**

1. Pursuant to Business and Professions Code sections § 17203 and §17535, and pursuant to the equitable powers of this Court, plaintiff prays that the defendants be preliminarily and permanently enjoined from committing any acts of unfair competition in violation of § 17200, including, but not limited to, the violations alleged herein (e.g. false/misleading leases and releases mischaracterizing the nature and value of personal property in the bank's possession; using surveillance equipment for an illegitimate purpose; searching and seizing plaintiff's property without a warrant or probable cause).

2. Pursuant to Business and Professions Code sections § 17203 and §17535, and pursuant to the equitable powers of this Court, plaintiff prays that the defendants are ordered to restore to the general public all funds or property acquired by means of any act or practice declared by this Court to be unlawful or fraudulent or to constitute unfair competition under Business & Professions Code §17200 et seq., or untrue or misleading advertising under §17500 et seq.

3. Restitution of property, title and/or identity to plaintiffs and the Class;

4. Disgorgement of profits;

5. Costs;

6. Attorneys' fees;

7. Such other and further relief as this Court finds necessary and proper.

**Eighth Cause of Action**

8. Set aside the trustee's deed upon sale;

9. Actual Damages;

10. General Damages;

**66**

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

11. Punitive Damages;

12. Costs;

13. Attorneys' fees;

14. Such other and further relief as this Court finds necessary and proper.

15.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to those issues that are not equitable in nature.

Dated: June 6, 2014                LAW OFFICES OF LENORE ALBERT

                                   By: s/Lenore L. Albert_____
                                   LENORE L. ALBERT, ESQ.
                                   Attorney for plaintiffs, Victoria Urenia, Soledad
                                   Corona, Cathelene Hughes, Javier Hernandez,
                                   Brenda Hernandez, *and all others similarly
                                   situated*

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE:
 I declare that I am over the age of 18 years, and not a party to the within action; that I am employed in Orange County, California; my business address is 7755 Center Avenue Suite #1100, Huntington Beach, CA  92647.
On June 6, 2014 I served a copy of the following document(s) described as:

**FIRST AMENDED CLASS ACTION COMPLAINT**

On the interested parties in this action as follows:
<u>For Defendant Bank of America, N.A.:</u>
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: 415.543.8700
Fax: 415.391.8269
Peter J. Kennedy, Esq.
pkennedy@reedsmith.com
Mathew M. Wrenshall, Esq.
mwrenshall@reedsmith.com
Tuan Ung, Esq.
tuong@reedsmith.com

**[X ] BY CM/ECF –** I caused such document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth pursuant to FRCP 5(d)(1).

Dated: June 6, 2014

/s/ Lenore L. Albert
Lenore L. Albert

68

**FIRST AMENDED CLASS ACTION COMPLAINT**

Urenia v Public Storage  CV 13-01934 DDP (AJWx)