O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA URENIA, an individual; SOLEDAD CORONA, an individual,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>PUBLIC STORAGE, a real estate investment trust; CITY OF LOS ANGELES, a governmental entity; BANK OF AMERICA, N.A.; MICHAEL ANZ,<br><br>　　　　Defendants. | Case No. CV 13-01934 DDP (AJWx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS BANK OF AMERICA, N.A., PUBLIC STORAGE, AND MICHAEL ANZ'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>[DKT. NO. 63, 64] |

Presently before the Court is Defendants Bank of America, N.A., Public Storage, and Michael Anz's motion to dismiss Plaintiffs' First Amended Complaint (the "Motion"). (Docket Nos. 63, 64.) For the reasons stated in this Order, the Motion is GRANTED IN PART and DENIED IN PART.

**I. Background**

　　A. Procedural Background

　　This action was originally filed by Victoria Urenia and Soledad Corona against Bank of America, N.A., Public Storage,

Michael Anz, and the City of Los Angeles (collectively, "Defendants") regarding the foreclosure of Ms. Corona's home and the storage of her personal belongings from that home at a Public Storage facility. (See Docket No. 1.) The action purported to be a class action. (Id.) The Court granted in part and denied in part the motion to dismiss the original complaint, with leave to amend. (Docket No. 59.) Upon amendment, three new plaintiffs were added to this action: Cathelene Hughes, Javier Hernandez, and Brenda Hernandez.[1] (See First Amended Complaint ("FAC"), Docket No. 60.) The City of Los Angeles answered. (Docket No. 61.) Bank of America, Public Storage, and Anz (collectively, "Private Defendants") then filed the Motion. (Docket No. 63, 64.)[2] After the Motion was filed, Victoria Urenia, Soledad Corona, and Cathelene Hughes were dismissed from the action without prejudice after the Court held a hearing on Plaintiffs' counsel's motion to withdraw as attorney for those three plaintiffs. (See Docket Nos. 100, 105.) Therefore, the only remaining plaintiffs are Javier Hernandez and Brenda Hernandez (collectively, "Plaintiffs"). Accordingly, the Court will address the sufficiency of the FAC with respect to these Plaintiffs only.[3]

B. Factual Background

---

[1] In the Court's prior order ruling on the motion to dismiss the original complaint in this action, the Court expressed some skepticism as to whether the action would be able to proceed as a class action, though the Court did not rule on the issue of class certification at that time. Perhaps in an attempt to demonstrate the potential for class claims, these three new plaintiffs were added.

[2] Private Defendants actually filed two motions: one as to Ms. Corona's claims (Docket No. 64) and one as to the claims of Ms. Urenia, Ms. Hughes, and the Hernandezes (Docket No. 63).

[3] **The motion to dismiss filed against Ms. Corona (Docket No. 64) is moot.**

2

1    Plaintiffs Javier Hernandez and his sister Brenda Hernandez
2 were the owners of real property located at 14620 Leadwell Street,
3 Van Nuys, California 91405 (the "Property") and secured by a deed
4 of trust from Countrywide Bank, N.A. (FAC ¶¶ 5-6, 130.) Countrywide
5 recorded a notice of default against the Hernandezes in 2008. (Id.
6 ¶ 131.) Bank of America later asserted ownership of the loan as
7 Countrywide's successor. (Id. ¶ 132.) A trustee's sale was recorded
8 in 2011. (Id. ¶ 133.) Plaintiffs allege that after the sale,
9 Plaintiffs were threatened with the deportation of their father if
10 they refused to vacate the Property. (Id. ¶ 134.) Plaintiffs
11 refused to vacate, and their father was deported. (Id. ¶ 135.)
12     Javier Hernandez then joined the Occupy Fights Foreclosures
13 ("OFF") group and began to participate in their meetings and
14 demonstrations, including events at Ms. Corona's home and at the
15 Property. (Id. ¶¶ 136-40, 168.) Plaintiffs allege that Los Angeles
16 Police Department ("LAPD") officers would monitor OFF and its
17 members by finding out about events and protests through social
18 media, then showing up at the events, demanding identification of
19 those present, and sharing the identities of the protestors with
20 Bank of America. (Id. ¶ 170.) Plaintiffs allege that Bank of
21 America would then plan immediate lockouts of those individuals
22 involved in the protests. (Id.) Further, Plaintiffs allege that
23 LAPD commanded that no one was allowed to photograph or videotape
24 what was happening at the protests and that LAPD would remove signs
25 placed on the Property as part of the protests. (Id. ¶ 173, 182.)
26     As the holiday season in 2012 approached, Plaintiffs allege
27 that Bank of America represented through media outlets that it
28 would put a halt to foreclosure evictions during the holidays. (Id.

¶ 141.) Nevertheless, Plaintiffs allege that they were locked out of the Property on December 27, 2012 by Bank of America, LAPD, and the Los Angeles Sheriff's Department ("LASD") after LAPD and LASD "stormed" the Property with 50 to 200 armed officers at approximately 4:00 or 5:00 AM. (Id. ¶¶ 142-43.) All persons at the Property, including Javier and at least 8 other individuals, were forcibly removed from the Property. (Id. ¶ 146.) A "clean up crew" then came and removed all of their personal belongings from the Property without letting Plaintiffs or others retrieve any belongings. (Id. ¶ 147.) Plaintiffs allege that there was no valid search or seizure warrant for the Property. (Id. ¶ 145.) Plaintiffs allege that later, Javier Hernandez was forced to sign a storage rental agreement with Public Storage and pay $250.00 in order to see his personal property again and that upon gaining access to his belongings, he discovered that much of the property was damaged or missing. (Id. ¶ 152.)

Plaintiffs bring a variety of claims arising out of these events. Plaintiffs allege violations of the First Amendment, Fourth Amendment, RICO, the Sherman Act, and Cal. Bus. & Prof. Code § 17200. Plaintiffs purportedly bring all of their claims on behalf of a class of similarly situated individuals who have been subjected to the same alleged acts that Plaintiffs experienced.

**II. Legal Standard**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must

4

"accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." <u>Id.</u> at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. <u>Id.</u> at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." <u>Id.</u> at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." <u>Twombly</u>, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

**III. Discussion**

As a preliminary matter, it appears that Defendant Michael Anz is only personally implicated in the factual allegations regarding Ms. Corona and Ms. Urenia. As those plaintiffs are no longer involved in this action, there are no remaining allegations that involve Mr. Anz. As a result, the Court DISMISSES all claims

against Defendant Anz. The Court's remaining analysis, therefore, addresses the sufficiency of the FAC as to Bank of America and Public Storage only.

## A. Section 1983 Claims

Plaintiffs' § 1983 claims are based on purported violations of Plaintiffs' First Amendment and Fourth Amendment rights. Private Defendants argue first that Plaintiffs' Section 1983 claims should be dismissed as to them because they are not state actors and did not act under color of law. "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Generally, private actors do not act under color of state law. Price v. State of Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991). Further, "it is generally not a constitutional violation for a police officer to enforce a private entity's rights." Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008). Nor does a private party's invocation of remedies provided by state law constitute state action. See Harper v. Federal Land Bank of Spokane, 878 F.2d 1172, 1178 (9th Cir. 1989) ("[T]he fact that a state permits the use of foreclosure procedures and subsequent sheriff sales as the execution of a judgment is not sufficient to constitute state action.").

However, there are situations where a private individual or entity can be held liable under § 1983 under a joint action theory. See Kirtley v. Rainey, 326 F.3d 1088, 1093-95 (9th Cir. 2003); Tsao

v. Desert Palace, Inc., 698 F.3d 1128, 1140 (9th Cir. 2012). Joint action exists where the state has "so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity." Gorenc v. Salt River Project Agric. Improvement & Power Dist., 869 F.2d 503, 507 (9th Cir. 1989) (quoting Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961)).

The Court previously found that Plaintiffs had sufficiently pleaded joint action as to Plaintiffs' Fourth Amendment claim. (See Docket No. 59.) However, that determination was made with reference to the alleged facts regarding Ms. Urenia and Ms. Corona. Since those plaintiffs are no longer a part of this action, the Court's prior determination is irrelevant, and the Court must now determine whether the allegations regarding the current plaintiffs, Javier and Brenda Hernandez, support a plausible claim that Private Defendants acted jointly with LAPD such that they may be held liable for § 1983 violations.

       1. *First Amendment Claim*

To state a First Amendment retaliation claim, a plaintiff must show: "(1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant[']s actions cause the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." Forte v. Jones, 2014 WL 2465606, at *3 (E.D. Cal. 2014); see also Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000). Private Defendants do not challenge that Plaintiffs' activity at

7

OFF protests was protected activity. However, Private Defendants argue that no acts by Private Defendants would chill speech and that those acts were not motivated by a desire to chill speech.

The Court finds that Plaintiffs have alleged sufficient facts to support their allegation that their First Amendment rights were violated. Plaintiffs allege that LAPD and Bank of America essentially worked together to effect foreclosures on those individuals who were active participants in the OFF movement. LAPD, at the request of Bank of America, was present at various protests and demanded identification of those present. Then, Bank of America allegedly used that information to selectively evict those homeowners who participated in the protests. This alleged scheme, jointly performed by LAPD and Bank of America, would certainly chill a person of ordinary firmness from continuing to protest. If presence at an OFF protest meant that individuals would be required to show identification to LAPD and that, if they did so, they would later be singled out for immediate lock-out by Bank of America, it is reasonable to assume that most people would be chilled from protesting for fear of losing their homes. The fact that multiple individuals were locked out within a short period of time after such protests further supports the conclusion that the lock-outs were intended to quell further protests against Bank of America and the foreclosure process. Further, by using LAPD both to collect identifying information and to assist in the lock-out of Plaintiffs, Bank of America relied on the authority of state actors to accomplish the lock-out. Where police officers do more than merely "stand by" in case of trouble, but instead affirmatively participate in assisting private actors in effectuating an eviction

or repossession of property, the private actors may be said to be acting under color of law. See <u>Howerton v. Gabica</u>, 708 F.2d 380, 383-84 (9th Cir. 1983)

Therefore, the Court finds that Plaintiffs' First Amendment claim survives the Motion as to Bank of America, and the Motion is therefore DENIED as to Bank of America. However, Plaintiffs have not alleged sufficient involvement of Public Storage in their First Amendment claim, the Court GRANTS the Motion as to any First Amendment claim against Public Storage.

    2. *Fourth Amendment Claim*

Private Defendants argue that Plaintiffs' Fourth Amendment claim fails because their entry onto the Property and seizure of personal property therein was entirely lawful, as they assert that Plaintiffs no longer had an interest in the Property. Further, Private Defendants argue that there was no joint action.

As to the first argument, the allegations establish a plausible claim that Plaintiffs' lock-out was not lawful. While discovery may prove that Private Defendants had performed all of the necessary acts to properly evict Plaintiffs from the Property, it is not clear to the Court at this time that Private Defendants acted lawfully. The code sections cited by Private Defendants in support of this argument pertain only to the storage of personal property, and Private Defendants do not address the other aspects of Plaintiffs' Fourth Amendment claim, including entry into the occupied Property and removal of individuals present there. Therefore, Private Defendants' argument in this respect is unavailing.

As to the second argument, the Court previously determined that substantial officer involvement in the lock-out process was sufficient to support a finding of joint action between LAPD and Bank of America. Although the underlying facts pertaining to the current Plaintiffs are slightly different, this conclusion remains the same. Where police officers do more than merely "stand by" in case of trouble, but instead affirmatively participate in assisting private actors in effectuating an eviction or repossession of property, the private actors may be said to be acting under color of law. Howerton v. Gabica, 708 F.2d 380, 383-84 (9th Cir. 1983) ("This case involves more than a single incident of police consent to 'stand by' in case of trouble. Police were on the scene at each step of the eviction... The actions of [the officer] created an appearance that the police sanctioned the eviction." ); see also Harris v. City of Roseburg, 664 F.2d 1121, 1127 (9th Cir. 1981) ("[T]here may be a deprivation within the meaning of § 1983 ... when the officer assists in effectuating a repossession over the objection of the debtor.").

Here, Plaintiffs' alleged facts indicate that the LAPD officers did more than merely "stand by" when Bank of America locked Plaintiffs out of the Property, evicted Plaintiffs from the Property, and took possession of Plaintiffs' personal belongings. However, the alleged facts do not demonstrate that Public Storage or Michael Anz performed any acts jointly with LAPD officers, such that any acts performed by Public Storage were not performed "under color of law." Therefore, the Court DENIES the Motion as to Plaintiffs' Fourth Amendment claim against Bank of America and

GRANTS the Motion with leave to amend as to Plaintiffs' claim against Public Storage.

### B. RICO Claims

The elements of a civil RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Rezner v. Bayerische Hypo-Und Vereinsbank AG, 630 F.3d 866, 873 (9th Cir. 2010). "To have standing under civil RICO, [a plaintiff] is required to show that the racketeering activity was both a but-for cause and a proximate cause of his injury." Id. (citing Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992)). Private Defendants argue that Plaintiffs' RICO claim should be dismissed because (a) Plaintiffs fail to plead the predicate acts of mail fraud and wire fraud with sufficient specificity, and (b) there is an insufficient nexus between mail and/or wire fraud and Plaintiffs' alleged injuries in this case to satisfy the standing requirement. Further, Private Defendants argue that Plaintiffs' RICO conspiracy claim fails because the underlying RICO claim fails. Finally, Private Defendants argue that there is no cognizable claim for aiding and abetting a civil RICO claim.

The predicate acts upon which Plaintiffs base their RICO claim appear to be mail and/or wire fraud. The purportedly false representations at issue here are a bit ambiguous. The alleged fraud occurred when Bank of America, after taking Plaintiffs' property to Public Storage, sent Plaintiffs a one page "Release via Email, Fax and/or US mail ... representing that if the plaintiff signs the release they will be able to obtain their property from storage." (FAC ¶ 273.) Plaintiffs allege that this representation was false, as Plaintiffs were forced to sign a seven-page lease

11

agreement with Public Storage in order to even see their belongings. (Id. ¶¶ 273-74.) Further, Plaintiffs include generalized allegations regarding other purportedly false statements contained in "leases, promotional materials, applications, agreements, manuals and correspondence." (Id. ¶¶ 287-88.)

As to all predicate acts other than the sending of the "release" document, Plaintiffs have not alleged mail and/or wire fraud with sufficient specificity to satisfy the Rule 9(b) pleading standard. Plaintiffs do not allege what documents were sent to them, when they were sent, or the specific misrepresentations made in those documents.

As to Plaintiffs' claim based on the "release" document, the Court need not address whether these allegations are sufficiently specific to comport with the Rule 9(b) pleading requirements because the Court finds that the RICO claim may be dismissed on the basis of Private Defendants' second argument. It is not clear how the mail and/or wire fraud at issue here was either the actual or the proximate cause of any harm to Plaintiffs. The harm at issue here stems from the seizure of Plaintiffs' items from their home and placement in a Public Storage facility. Harm may possibly have also resulted from Plaintiffs being forced to sign a purportedly adhesive and unconscionable lease agreement. (See id. ¶ 307.) Those acts, while potentially unlawful under other claims Plaintiffs may have, do not constitute mail fraud or wire fraud. In order to establish a fraud claim, Plaintiffs would have to show that they suffered harm as a result of relying on the misrepresentations made in the "release" documents sent to them. Here, Plaintiffs do not

12

allege that any particular harm occurred as a result of the alleged misrepresentations; Plaintiffs' property was already at a Public Storage facility by the time any such misrepresentations were made, and it is unclear what further harm did or could have occurred by reason of a representation. As a result, the Court GRANTS the Motion as to Plaintiffs' RICO claims.

Plaintiffs also bring a RICO conspiracy claim. (Id. ¶¶ 310-17.) As their underlying RICO claim is insufficiently pled, the conspiracy claim fails as well. See Howard v. America Online, Inc., 208 F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO."). Further, as noted in the Court's prior order, there is no private right of action for "aiding and abetting" RICO violations. Therefore, to the extent that Plaintiffs still attempt to assert such a claim, it must be dismissed.

Therefore, the Court GRANTS the Motion as to all of Plaintiffs' RICO claims.

C. Sherman Act Claims

A claim under Section 2 of the Sherman Act requires "(1) the defendant possessed monopoly power in the relevant market; (2) the defendant willfully acquired or maintained that power through exclusionary conduct; and (3) the defendant's conduct caused antitrust injury." InfoStream Group, Inc. v. PayPal, Inc., 2012 WL 3731517, at *4 (N.D. Cal. 2012). Plaintiffs' Sherman Act claim appears to be based on Public Storage's alleged monopolization of the self-storage industry through an alleged agreement between Public Storage and Bank of America that all personal property

recovered from homes upon which Bank of America has foreclosed will be taken to a Public Storage facility. Private Defendants argue that Plaintiffs have not stated a claim under Section 2 of the Sherman Act because they have not suffered an antitrust injury.[4]

An antitrust injury "means harm to the process of competition and consumer welfare." LiveUniverse, Inc. v. MySpace, Inc., 304 F. App'x. 554, 557 (9th Cir. 2008). Plaintiffs allege that they sustained an antitrust injury in the following manner: Public Storage, because of its size, was able to offer a very low rental rate for the first month ($1 or even $0.01) to Bank of America; this induced Bank of America to store personal belongings from foreclosed home exclusively at Public Storage. (FAC ¶ 336.) For months subsequent to the introductory rate month, Plaintiffs allege, Public Storage is then able to charge a rental rate higher than the market rate because owners of the personal property now have no choice but to pay to store their belongings at the Public Storage facility. (Id. ¶¶ 341, 344.) It is somewhat unclear whether Plaintiffs claim that the antitrust violation was an explicit agreement between Public Storage and Bank of America to collude regarding storage of foreclosed homeowners' belongings or whether Plaintiffs instead intend to allege that the antitrust violation is Public Storage charging a very low introductory rate to induce Bank of America to use its storage facilities.

The Court finds that Plaintiffs have alleged sufficient facts to support a plausible claim that they suffered an antitrust

---

[4] Private Defendants offer a couple of additional arguments in their reply, but the Court does not consider those arguments, as they were not raised in the Motion.

14

injury. Because of the alleged collusion, which resulted in Public Storage being able to offer very low introductory prices and then locking foreclosed homeowners into higher prices for subsequent months, harms the welfare of these "forced" consumers of self storage services, Plaintiffs may be successful in pursuing their antitrust claims. Therefore, the Court DENIES the Motion as to Plaintiffs' Sherman Act claims.

D. UCL Claims

Plaintiffs premise their unfair competition law claim on Bank of America's alleged practice of "evict[ing] homeowners and search[ing] and seiz[ing] their personal property, when there is no valid search warrant and no arrest ... made." (FAC ¶ 354.) Further, Plaintiffs allege that Bank of America threatens "to arrest and tak[e] property without due process as a bargaining tool in order to coerce those to stop associating with the OFF movement to chill free speech." (Id. ¶ 356.) Finally, Plaintiffs appear to allege that even in the absence of underlying violations of law, the scheme at issue here of removing Plaintiffs' personal property and then making it difficult and costly to retrieve is unfair within the meaning of § 17200.

To the extent that Plaintiffs' underlying claims survive, or are amended to state a claim, the Court finds that the UCL claim survives under the "unlawful" prong of Cal. Bus. & Prof. Code § 17200. Further, Plaintiffs have added sufficient facts and allegations to support a plausible claim that the conduct at issue here was unfair. Unfair conduct is actionable under the UCL where the business practice at issue "offends an established public policy or when the practice is immoral, unethical, oppressive,

15

unscrupulous or substantially injurious to consumers." S. Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal.App.4th 861, 886-87 (1999) (citing People v. Casa Blanca Convalescent Homes, Inc., 159 Cal.App.3d 509, 530 (1984)). Accepting Plaintiffs' allegations as true, Plaintiffs' belongings were removed from their home and essentially held captive by Public Storage for what Plaintiffs dub a "ransom." Even if Bank of America had a right to possession of the Property and a right to remove personal property from the Property, the arrangement by which Plaintiffs allege that they were required to either pay a high rental fee or potentially lose their belongings forever can be characterized as oppressive and substantially injurious to the owners of such property. Therefore, the Court DENIES the Motion as to Plaintiffs' UCL claim.

**IV. Conclusion**

For the foregoing reasons, the Court GRANTS the Motion IN PART and DENIES the Motion IN PART. Because of the dismissal of certain plaintiffs subsequent to the filing of the FAC and the Motion, allowing clarification of Plaintiffs' claims by way of one more amendment is warranted, should Plaintiffs wish to amend to attempt to state claims dismissed in this order. Any amended complaint must be filed on or before November 21, 2014.

IT IS SO ORDERED.

Dated: November 6, 2014

DEAN D. PREGERSON
United States District Judge