1

2

3                                                                O

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     CENTRAL DISTRICT OF CALIFORNIA

10

11   VICTORIA URENIA, an          )   Case No. CV 13-01934 DDP (AJWx)
     individual; SOLEDAD CORONA,   )
12   an individual,               )   **ORDER DENYING PLAINTIFF'S EX**
                                  )   **PARTE APPLICATION TO EXTEND**
13                  Plaintiff,    )   **DISCOVERY CUT-OFF**
                                  )
14      v.                        )   [Dkt. No. 177]
                                  )
15   PUBLIC STORAGE, a real       )
     estate investment trust;     )
16   CITY OF LOS ANGELES, a
     governmental entity; BANK OF
17   AMERICA, N.A.; MICHAEL ANZ,

18                  Defendants.
     _____

19

20       On March 25, 2015, the Court granted Plaintiffs' previous ex

21   parte application to extend the discovery cut-off date to April 20,

22   2015, over Defendants' opposition.[1]  (Dkt. Nos. 147, 153, 162.)

23   Plaintiffs now once again move ex parte to extend the date to June

24   20, 2015, arguing that "Plaintiffs have been prevented from

25   obtaining discovery from the Defendants."  (Dkt. No. 177 at 6.)

26

27   _____

28       [1]This was the third extension of the cut-off date, although
     the prior extensions were not on Plaintiffs' motion.  (See Dkt.
     Nos. 55, 115.)

1    "A schedule may be modified only for good cause and with the

2    judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good

3    cause' standard primarily considers the diligence of the party

4    seeking the amendment." Johnson v. Mammoth Recreations, Inc., 975

5    F.2d 604, 609 (9th Cir. 1992) (internal quotation marks omitted).

6        There are two active Defendants remaining in this case: Bank

7    of America, N.A. ("BANA") and the City of Los Angeles ("the city").

8    Plaintiff wished to take depositions of so-called "persons most

9    knowledgeable" ("PMK" witnesses) from both defendants. Defendants,

10   similarly, wished to take depositions of the Plaintiffs. On

11   February 9, 2015, the magistrate judge in this case determined that

12   it would make the most sense for the Plaintiffs to be deposed

13   before Defendants' PMKs. (Decl. Peter Kennedy, Ex. B at 4.) The

14   magistrate judge also suggested that the proposed subjects on which

15   Defendants' PMKs were to be deposed might be overly broad: "I do

16   think they should be narrowed." (Id. at 27.) However, the

17   magistrate judge also suggested that they might not need to be

18   narrowed as much as defense counsel wished, and that "counsel

19   should discuss these categories." (Id.)

20       On March 26, 2015, the day after the Court's order granting

21   Plaintiffs' previous ex parte extending the cut-off date,

22   Plaintiff's counsel sent an email to the separate counsel for the

23   two Defendants asking them "agree on five (5) dates that your

24   clients are available for depositions." (Decl. Elizabeth

25   Greenwood, Ex. 1.) The email also stated that Plaintiffs' counsel

26   was available either March 27 or April 2nd to meet and confer.

27   (Id.)

28

1    On April 6, the city's counsel emailed Plaintiffs' counsel
2  saying she had "narrowed some of the issues on the PMK deposition"
3  and that she had identified two people who "may be able to cover
4  most of what you are looking for." (Id., Ex. 2.)  Counsel for the
5  city also suggested April 13, 14, and 15 for depositions of the
6  Plaintiffs and another witness.  (Id.)  Counsel for the city
7  declares that she followed up by phone and left a voicemail.
8  (Decl. Elizabeth Greenwood, ¶¶ 4-5.)  On April 7, counsel for the
9  city again emailed Plaintiff's counsel, again inquiring about
10  Plaintiff's availability and also volunteering to provide the
11  city's PMKs before April 13 "if necessary." (Decl. Elizabeth
12  Greenwood, Ex. 3.)  On April 8, counsel for the city unilaterally
13  set dates for the depositions of the Plaintiffs.  (Id., Ex. 4.)

14    There then followed a series of increasingly confrontational
15  emails between Plaintiffs' counsel and counsel for the city.
16  Plaintiffs' counsel claimed to have no recollection of defense
17  counsel's previous communications and stated that she, Plaintiffs'
18  counsel, had sent "multiple emails attempting to meet and confer,"
19  although these appear nowhere in the record.  (Id., Ex. 6.)
20  Plaintiffs' counsel announced her intent to file a motion to compel
21  if an agreement could not be reached.  (Id.)  In response, the
22  city's counsel stated that she would "happily make available" two
23  PMK witnesses who would be able to answer "most if not all" of
24  Plaintiffs' questions.  (Id.)  She also offered to make them
25  available before April 13, or, alternatively, in the afternoon
26  after Brenda Hernandez' deposition.  (Id., Ex. 7.)

27    Parallel to these communications with the city's counsel,
28  Plaintiffs' counsel was also in communication with BANA's counsel.

1   As noted above, Plaintiff's counsel had sent an email asking

2   Defendants for "five (5) dates that your clients are available for

3   depositions." BANA's counsel replied to Plaintiffs' counsel on

4   March 30 to ask for dates for depositions of the Plaintiffs, which,

5   he noted, "must be completed before BANA's deposition." (Decl.

6   Peter Kennedy, Ex. C.) Plaintiffs' counsel responded the same day:

7   "Answer my question, and I will be more than glad to [answer] yours

8   Peter." (Id., Ex. D.)

9        On April 8, after the city's counsel unilaterally set dates to

10  depose Plaintiffs, BANA's counsel again emailed Plaintiffs' counsel

11  to request confirmation of the dates as well as proposed topics for

12  the deposition of BANA's PMK. (Id., Ex. E.) Plaintiffs' counsel

13  then responded, somewhat confusingly, "Please confirm that your

14  clients will be able to testify prior to discovery cut off in this

15  case after your proposed dates for deposition testimony." (Id.,

16  Ex. F.) She also declined to give any specific proposals for

17  narrowing the topics of the PMK deposition. (Id.) BANA's counsel

18  appears to have interpreted this as a refusal to confirm the dates

19  of the depositions of the Plaintiffs or to narrow the proposed

20  topics of the PMK depositions. (Id.)

21       On April 10, Plaintiffs' counsel filed an ex parte motion to

22  compel Defendants' depositions as well as a motion for a protective

23  order. (Dkt. No. 168.) The city's counsel emailed Plaintiffs'

24  counsel twice that day to reiterate her offer to make two PMK

25  witnesses available. (Decl. Elizabeth Greenwood, Ex. 11.) The

26  motion for a protective order was denied the same day, and the

27  magistrate judge invited Plaintiffs to schedule a discovery

28  conference to discuss the PMK depositions. (Dkt. No. 171.) On

4

1   April 15, a discovery conference was set for April 22 — two days

2   after the discovery cut-off.  (Dkt. No. 175.)  At that conference,

3   the magistrate judge deferred the question of what to do about the

4   PMK depositions, pending the Court's decision on this ex parte

5   application.  (Dkt. No. 183.)

6        Plaintiffs bear the burden of showing there is good cause to

7   modify the scheduling order.  Johnson, 975 F.2d at 609 (denying

8   motion because moving party failed to demonstrate good cause).  In

9   this case, Plaintiffs have not met that burden.  As to the city's

10  witnesses, it seems obvious from this record that the city's

11  counsel made every attempt to make the city's PMK witnesses

12  available to Plaintiffs' counsel.  Plaintiffs declined, entirely,

13  to take up any of her offers to set a date to depose those

14  witnesses.  Plaintiffs were not diligent as to the city's

15  witnesses.

16       As to BANA's PMK witness or witnesses, although BANA's counsel

17  was not as forthcoming and cooperative as the city's counsel, BANA

18  nonetheless was not unreasonable in asking Plaintiffs for possible

19  deposition dates, since the magistrate judge had apparently

20  established the order in which the depositions should occur.

21  Plaintiffs' counsel provided no such dates, instead demanding that

22  BANA's counsel set dates first.  The discussion then stalled,

23  around March 30.  At that point, Plaintiffs could have filed a

24  motion to compel discovery if they believed that it was not

25  possible to come to an agreement on dates.[2]  Or, if they believed

26  _____

27       [2]Plaintiffs' counsel did eventually file a motion to compel.
    It is unfortunate that a discovery conference related to that
28  motion could not be held until after the discovery cut-off.  But
                                                    (continued...)

1   that the magistrate had *not* set a particular order for the

2   depositions, Plaintiffs could simply have noticed the desired

3   depositions and let BANA file for a protective order if it wished

4   to do so.   Either way, had Plaintiffs acted promptly, the matter

5   could have been resolved by the magistrate.   Plaintiffs were not

6   diligent as to the BANA witnesses.

7         Plaintiffs have not shown that there is good cause to modify

8   the scheduling order again.   The ex parte application is DENIED.

9

10   IT IS SO ORDERED.

11

12

13   Dated: May 7, 2015

14                                         DEAN D. PREGERSON
                                          United States District Judge

15

16

17

18

19

20

21

22

23

24

25   _____

26        [2](...continued)
     that is a result of Plaintiffs' counsel's decision to wait to file

27   the motion until ten days before the discovery cut-off.   Given that
     Plaintiffs and BANA apparently reached an impasse on March 30, and

28   given that Plaintiffs knew the discovery cut-off was looming, there
     was no reason to wait so long.